## THE STATE v. ORA LEWIS, *alias* DeMORRIS, and ROY LEWIS, alias JOE LEWIS, alias DeMORRIS, Appellants.

### Division Two, February 26, 1918.

1. **INTENT:** Carrying Concealed Weapons: Unarmed Thief.   Without further showing, an intent to murder cannot be imputed to a man who unlawfully carries concealed weapons; or to an unarmed thief.   But such intent can be imputed to a proven thief who unlawfully carries pistols concealed on his person.

2. ————: ————: ————: Conspiracy.   When two brothers, in daily association, and with the evident knowledge on the part of each that the other is unlawfully armed with concealed weapons, go about their dishonest work of stealing automobiles and valuable copper wire, such facts strongly point to a mutual understanding and conspiracy that their arrest shall be thwarted by killing the officer who attempts it.   And the force of such evidence is increased by the fact that each carries his weapon concealed in an unusual place upon his person, to prevent the discovery of the weapons.

3. ————: ————: ————: ————: Killing of Another in Attempt to Escape.   And such conspiracy or mutual understanding is further increased by the fact that immediately after one of them had shot the officer who had placed them under arrest, both fled headlong together from the place, concealed themselves in another garage, and killed another officer who attempted to interrupt them in their attempted escape.

4. **MOTION FOR NEW TRIAL:** Assignments: Must Be Specific.   If the motion for a new trial in a criminal case only mentions the instructions generally, such as "the court erred in declaring the law of the case," "the instructions given are a comment on the evidence" and the court omitted to take by proper instruction from the jury's consideration certain illegal, incompetent, immaterial, irrelevant and improper testimony admitted over the timely objection of defendants," the giving, refusal or failure to give any instruction is not properly before the appellate court for review on appeal, because it does not call attention to any specific proposition.   However, in this capital case, in which it is stated in the brief that, because of "the misconduct, lack of skill and incompetency of the attorney who appeared for defendants at the trial," they were "prejudiced and were prevented from fairly presenting their defense," so much of the instructions

State v. Lewis.

as relate to the material points raised by their counsel are set forth, considered and held to be free from error.

5. **INSTRUCTION: For Murder in Second Degree.** An instruction for murder in the second degree is properly refused if there is no evidence on which to base it. In this case it was not error to confine the instructions to murder in the first degree.

6. ————: **Reasonable Doubt.** The instruction set out in the statement as to a reasonable doubt about any one fact necessary to show guilt, when considered in connection with another instruction concerning the general subject of reasonable doubt, was as favorable to defendants as they have any right to claim.

7. ————: **Conspiracy: Contradictory.** An instruction to the effect that there is no evidence that one of the defendants was present at the scene of the shooting at the time the other shot the officer "for the purpose of aiding or abetting the same, by word or act," and that "the only ground upon which he could be held legally responsible for said shooting would be that it was done in the execution of a conspiracy or agreement to which he was a party," was not error, there being positive evidence of the existence of a prior conspiracy to kill in an attempt to escape arrest, and there being no evidence that the shooting was done over the said defendant's protest.

8. **CAPITAL PUNISHMENT: Reduction in Supreme Court.** Where the punishment had been assessed, sentence pronounced, judgment entered and an appeal taken before the Act of 1917 abolishing capital punishment went into effect, the Supreme Court is not authorized by the statutes to reduce the punishment to life imprisonment. [Opinion on Motion to Modify Judgment.]

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*A. Samuel Bender* for appellants.

(1) The court erred in overruling the defendant's demurrer to the evidence at the close of the State's case, because there was no evidence that the defendant Roy Joe Lewis in any way aided or participated in the killing of McKenna, and because it was not shown that they were conspirators, or that they were engaged in a common design of which the offense was a part. Green v. State, 13 Mo. 382; State v. Walker, 96 Mo. 95. (2) The giving of instructions without evidence

upon which to base them is reversible error. State v. Little, 228 Mo. 273; State v. McCaffery, 225 Mo. 617; State v. Clark, 221 Mo. 391; State v. Scott, 172 Mo. 536; State v. Bell, 194 Mo. 264; State v. Harris, 199 Mo. 716; State v. Ware, 62 Mo. 597; State v. Jones, 64 Mo. 391; State v. Little, 67 Mo. 624; State v. Tice, 9 Mo. 112; (3) An instruction which is incomplete and by reason of such conditions becomes a comment upon the evidence, is erroneous, and invades the province of the jury. State v. Evans, 183 S. W. 1059; State v. Fairlamb, 121 Mo. 137; State v. Cook, 84 Mo. 49. (4) It is error for the court to instruct the jury that "if the jury have a reasonable doubt arising from the lack or insufficiency of the evidence, of the existence of any such material fact as to the defendant, the jury will acquit the defendant," and is erroneous because the defendant is entitled to an acquittal upon the consideration of all the evidence as presented. State v. Christian, 253 Mo. 382; State v. Cushionberry, 157 Mo. 168; State v. Temple, 194 Mo. 228; State v. Harper, 149 Mo. 514; State v. Maupin, 196 Mo. 174. (5) Evidence of other distinct and disconnected crimes, and which throws no light upon the crime in issue, is inadmissible. State v. Young, 119 Mo. 495; Bank v. Bank, 64 Mo. App. 253; State v. Summers, 26 Mo. 250; State v. Parker, 96 Mo. 382; Swan v. Commonwealth, 104 Pa. 218; People v. Sharp, 107 N. Y. 427; Commonwealth v. Jackson, 132 Mass. 16; People v. Mollineaux, 67 L. R. A. 237; State v. Schmetler, 181 Mo. 173; State v. Harold, 38 Mo. 496; State v. Palmberg, 199 Mo. 233. (6) It is improper conduct on the part of the circuit attorney in his argument to characterize the defendants as savages, and the court's overruling an objection to such improper argument is erroneous. State v. Young, 99 Mo. 666; State v. Ulrich, 110 Mo. 350; State v. Fischer, 124 Mo. 460. (7) On indictment for murder in first degree, where the evidence is sufficient to warrant an instruction on murder in second degree, the refusing to give such instruction is error. (8) On indictment for mur-

der, wherein a police officer is killed while making an arrest, the legality of the arrest is a question for the jury, and the jury should be instructed upon the law if the arrest were legal and upon reasonable ground of suspicion of guilt, and also upon the law if the arrest were unlawful and not based upon reasonable suspicion of guilt. Refusal to give an instruction to this effect is reversible error. Roberts v. State, 14 Mo. 138.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for the State.

(1) The court did not err in overruling appellants' demurrers to the evidence offered at the close of the State's case. Where there is substantial evidence to support the verdict, a demurrer to the evidence should be overruled. State v. Pollard, 174 Mo. 614; State v. Swain, 239 Mo. 728. (2) Appellant Roy Lewis was properly convicted. He was a conspirator with appellant Ora Lewis and others, in a common scheme or plan to engage in thievery, and resist arrest and punishment therefor. The killing of officers McKenna and Dillon was a part of such common design. State v. Hyde, 234 Mo. 224, 226, 237; State v. Weisman, 238 Mo. 555; State v. Rasco, 239 Mo. 575; State v. Bailey, 190 Mo. 279; State v. Jones, 171 Mo. 407; State v. Mathews, 98 Mo. 129; State v. Balch, 136 Mo. 109. (a) If several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design is, in the construction of the law, the act of all. State v. Darling, 216 Mo. 459; State v. Othick, 184 S. W. 108; State v. Bobbitt, 215 Mo. 39. (b) It is not necessary, in proving a conspiracy, to commit a crime to show an express agreement; the conspiracy may be shown by facts and circumstances from which it may be inferred. State v. Sykes, 191 Mo. 78; State v. Darling, 199 Mo. 199. (3) General assignments complaining of error in the trial

court's giving and refusing instructions, are not sufficiently definite to entitle them to review. The motion for new trial should designate the erroneous instructions by reference to their number or their subject-matter. The motion for new trial in this case contains only general averments as to the giving and refusing of instructions. Sec. 5285, R. S. 1909; State v. Othick, 184 S. W. 108; State v. McBrien, 265 Mo. 604. (a) Appellants made no objection to the action of the trial court in refusing to give their instructions, and saved no exceptions to the ruling of the court. · Hence refused instructions are not reviewable. State v. Morgan, 196 Mo. 184; State v. Jones, 191 Mo. 663. (b) Alleged failure to instruct on murder in the second degree is not made a ground of the motion for new trial. State v. Scott, 214 Mo. 261. (c) Alleged failure to instruct on law of arrest by police officers is not made a ground of motion for new trial. State v. Scott, 214 Mo. 261. (4) The remark of the circuit attorney, complained of, is not properly preserved for review. The objection to such remark is as follows: "I object to the remark. of the circuit attorney." This language does not set forth the grounds of the objection, therefore there is nothing before this court for review upon that matter. State v. Miller, 264 Mo. 407; State v. Phillips, 233 Mo. 299. (5) The request that this case be reversed on account of incompetency of trial counsel cannot be considered by this court. Said request is not made one of the grounds of the motion for new trial. It is raised for the first time in the brief of appellants. State v. Scott, 214 Mo. 261; State v. Dreher, 137 Mo. 23.

ROY, C.—Defendants were charged by indictment with the murder in the first degree of police officer John F. McKenna. The jury found them both guilty as charged, and fixed their punishment at death. The trial court commuted the defendant Roy Lewis's punishment to a life term in the penitentiary. They were sentenced accordingly, and have appealed. After the

disposal of the case in the trial court, the defendants discharged the lawyer who had represented them during the trial. Other counsel appears for them in this court, and in his brief herein he says:

"An examination of the facts and a reading of this entire record must convince this court that defendants have been prejudiced and have been prevented from fairly presenting their defense by the misconduct, lack of skill, learning, competency or experience of the attorney who appeared for defendants in the trial court. That such a situation warrants a new trial has been the ruling in many cases."

Such claim made on behalf of defendants, and the fact that, as to one of them, the punishment is death, call for a critical examination of the whole record.

No evidence was introduced on the part of the defendants on the main issue. In the following statement we shall set out simply as facts those things which the evidence tends to establish.

The killing occurred on April 7, 1916. From the previous January until then the defendants and their brother Frank lived with their mother and stepfather, Mr. and Mrs. Bubb, at 4251 Athlone Court, St. Louis, Missouri, though the evidence indicates that they, at times, had rooms elsewhere. In the rear of the Athlone home was a garage on the alley, used by the brothers. For several weeks prior to the killing the defendants had also rented and used a garage on an alley in the rear of 4172 Delmar Avenue. About March 10, 1916, two automobiles, a Ford and a Hudson, were stolen in the city. On the night of April 6th, thereafter, the defendants, their brother Frank, and another, went in those two cars to Mexico, Missouri, where they stole a boy's bicycle and several hundred dollars' worth of copper trolley wire. The defendants in the Ford car pulled into the alley near the Delmar garage about half past seven the next morning. At that time Roy was carrying a loaded revolver in a holster which hung in the middle of his back, under his coat. Ora had a similar gun con-

cealed somewhere in his clothes in front of him. Mc-Kenna, on a motorcycle, followed the defendants into the alley, where he arrested and searched them both, taking Roy's gun from him, but failing to find Ora's. McKenna took the defendants into an oil-filling station on the alley, and directed the person in charge, George Fisher, Jr., to call the wagon at police headquarters. Fisher called on the telephone, which was in the corner of the room on the wall. The defendants were standing about a foot apart to the left and towards the rear of Fisher. They were facing McKenna, whose attention was attracted for a moment by the arrival of another automobile back of him and just outside the station. As the officer turned to look at the car, Ora pulled his gun and shot the officer, killing him. Fisher turned from the telephone just in time to see the shot, but not in time to see the drawing of the gun. Instantly after the shooting the defendants rushed from the station and attempted to find Frank and the Hudson car, but Frank, who had come into the alley after the arrest and before the killing, on seeing the situation, had scurried away in the Hudson car. The defendants, failing to find their brother, jumped into the Ford car and got away. Soon after eight o'clock that morning the defendants arrived at the garage in the rear of the defendants' home at Athlone Court, and a few moments after that, Officer William A. Dillon, who had been notified of the death of McKenna, reached the Athlone garage, in which he found the defendants. He entered that garage and was there killed by these defendants with a hatchet and shovel. The defendants and two others wrapped the dead body in a blanket, loaded it into the Hudson car, took it about five miles into the country, dumped it over the end of a culvert into a deep ravine, and covered it with about six inches of dirt, leaving exposed a protruding foot. On Sunday, April 9th, the body was discovered. The defendant Roy Lewis was arrested at his home the following night, and Ora was arrested in Kansas City the

following September.  He was then living under an as-
sumed name.

The State offered to put in evidence a written state-
ment made and signed by defendant Roy Lewis at police
headquarters as to the killing of McKenna and Dillon,
and also offered to prove an oral statement by Roy show-
ing a conspiracy of the brothers to kill the police when
necessary to make an escape.  The preliminary proof as
to whether such statements were voluntarily made was
taken before the court in the absence of the jury, and
consumed several days in the taking.  The trial court,
in a masterly discussion of the evidence on that question,
and of the law and the duty of the court, acquitted the
police of any intentional mistreatment of the defendant
Roy in connection with such statements, but held that
the evidence showed that the questioning of the defend-
ant was too persistent and too long continued, while he
was at times being held *ex communicado*.  The state-
ments were excluded for that reason, the court saying:
"I cannot imagine any physical torture being quite so
severe as the refined torture of keeping a person on edge
by continued and repeated examination."

Defendants objected to the evidence as to the
killing of Dillon, on the ground that such killing was
another and distinct offense from the one charged, and,
for that reason, incompetent.  The objection was over-
ruled.

At the close of the State's case demurrers there-
to were offered in behalf of each of the defendants
separately.  They were both overruled.  The court in-
structed fully on all questions arising in the case.  It,
however, confined the instructions to murder in the first
degree, refusing one on the second degree offered by de-
fendants.  Among the instructions are the following:

"SECOND:  All persons are equally guilty who
act together with a common intent and purpose in the
commission of a crime, and a crime so committed by two
or more persons jointly is the act of all and each so
acting.  However, the mere presence of a person upon
the scene of the shooting and killing of another, even

though he mentally approve of what is being done, will not in the absence of some word or act of approval or encouragement make such party guilty of the crime; yet if he be present and by words or actions aid or advise or encourage the shooting, with the intent that the words or acts of encouragement should encourage and abet the crime committed, he will be equally guilty with the person who actually commits the physical deed.

"If, however, several enter into a conspiracy, agreement or common design to commit a felony, then the act of one of them, proceeding according to the common plan, is in law the act of each, and each of them will be held responsible therefor in the law, as though he himself had committed the physical act, and this notwithstanding that he may have taken no part in the commission of the physical act itself.

"The court further instructs you that there is no evidence in the case which would warrant you in finding that Roy Lewis was present at the scene of the shooting for the purpose of aiding or abetting the same, or that he by word spoken or act committed by him, at the time of the shooting, aided, abetted, or encouraged the same, and the only ground upon which he could be held legally responsible for said shooting would be that it was done in the execution of a conspiracy or agreement to which he was a party.

"THIRD: The court further instructs the jury that if you find from the evidence and beyond a reasonable doubt that defendant Ora Lewis did wilfully, deliberately, premeditatedly and out of his malice aforethought shoot and kill John F. McKenna, in the manner required to be proven in the preceding instruction in order to convict Ora Lewis, and if you further find from the evidence and beyond a reasonable doubt, that prior to the shooting of said John F. McKenna, the said Ora Lewis and Roy Lewis entered into an agreement or conspiracy with each other, in which it was mutually agreed between them that they would jointly commit acts of larceny, or stealing, and that if

interrupted in the commission thereof, or apprehended by officers of the police while engaged in the commission of such larceny, or in removing property stolen by them, they would resist or endeavor to escape, and if you believe, that defendant Ora Lewis shot and killed said John F. McKenna, in the prosecution of the objects of said conspiracy (if you find there was such a conspiracy), then defendant Roy Lewis would be equally responsible as defendant Ora Lewis for such shooting and killing, and you should find defendant Roy Lewis guilty of murder in the first degree, and unless you find the facts to be as stated in this instruction you will acquit the defendant Roy Lewis.

"THIRD (A): The court further instructs the jury that if you find and believe from the evidence that the defendants, Ora Lewis and Roy Lewis, had entered into an agreement or conspiracy with each other in which it was agreed between them that they would jointly commit acts of larceny, or stealing, and that if interrupted' in the commission thereof or apprehended by officers of the police while engaged in the commission of such larceny, or in removing the property stolen by them, they would not resist but would endeavor to escape, and that in attempting such escape they and neither of them would kill or do great bodily injury to the officer arresting them, and if you believe that defendant Ora Lewis shot said John F. McKenna and that in doing so he went outside of the common plan and committed an independent act wholly outside of the common design, then you cannot convict defendant Roy Lewis for such shooting, unless you believe that such shooting was the natural and approximate result of carrying out their purpose to escape. If it was the natural and approximate result of carrying out such purpose then the defendant Roy Lewis would be equally guilty with defendant Ora Lewis, even though the shooting and killing of an officer was not actually contemplated in their agreement.

"FOURTH: The court instructs the jury that while it devolves upon the State to prove a conspiracy,

such as is referred to in the preceding instructions, to your satisfaction and beyond a reasonable doubt, yet it need not be proven by direct evidence, but may be deduced from facts and circumstances proven to your satisfaction, provided you can satisfactorily and reasonably infer the existence of such a conspiracy from all the evidence. Before you can find the existence of a conspiracy from circumstantial evidence, you must be satisfied beyond a reasonable doubt not only that all the circumstances proven are consistent with defendants' having formed such a conspiracy, but you must also be satisfied that the facts are such as to be inconsistent with any other reasonable conclusion than that the defendants did form such conspiracy. If the facts proven are consistent with any reasonable conclusion that defendants did not form a conspiracy, that is sufficient to raise a reasonable doubt, and in such event you should find that there was no conspiracy or agreement between defendants; and in that event you must acquit defendant Roy Lewis.

"SIXTH: In this case the State has introduced evidence tending to prove the theft of two automobiles, in the month of March, 1916, some copper wire and a bicycle in the month of April, 1916, all prior to the alleged shooting of John F. McKenna, and also evidence tending to prove the killing of one William A. Dillon in the month of April, 1916, and subsequent to the shooting of said John F. McKenna.

"You are instructed that you can only consider such testimony for the purpose for which it was admitted, namely, that concerning crimes preceding the killing of John F. McKenna was introduced to show a motive and reason for shooting said McKenna, and that concerning the killing of William A. Dillon was admitted as tending to explain the movements of the defendants following the shooting of said John F. McKenna and as tending to show whether they were made in an attempt to flee and avoid arrest and prosecution for said shooting and killing, or were the result

of other causes than a consciousness of guilt and a desire to avoid arrest and prosecution.

"The defendants are on trial for the alleged murder of John F. McKenna, and you cannot convict them, or either of them, in this case, unless you find them, or him as the case may be, guilty of the charge of murdering said John F. McKenna, even though you should believe that either or both of them are guilty of any or all of the other offenses mentioned in the evidence."

The tenth instruction contained the following:

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendants' guilt, you should acquit; but a doubt to authorize an acquittal on that ground, ought to be a substantial doubt touching the defendants' guilt, and not a mere possibility of their innocence."

The eleventh is as follows:

"The court instructs the jury that it devolves upon the State to prove to the jury, beyond a reasonable doubt, every material fact necessary to constitute the offense with which the defendants are charged; and if the jury have a reasonable doubt, arising from the lack or insufficiency of the evidence, of the existence of any such material facts, as to either defendant, the jury will acquit such defendant."

Defendants asked a lot of instructions which were refused, but there was no exception to such refusal. During the argument of Mr. McCullen for the State, the following occurred:

"Mr. McCullen: When we think of this evidence and picture to our minds that scene in that oil station that morning and remember the subsequent events, I think we are not going too far when we say that that evidence shows that when John F. McKenna, the agent of organized society, stood there with these men under arrest, keeping in mind their subsequent actions as disclosed by this evidence, I feel that we may safely say that there in that oil station civilization, personi-

fied by John F. McKenna, stood face to face with savagery.

"Mr. Weiss: I object to the remark of the Circuit Attorney.

"The court overruled the objection. To which ruling of the court defendants, by their counsel, then and there duly excepted and still continue to except."

The only points made in the motion for a new trial as to the giving, refusing to give, or failing to give, instructions, are as follows:

"4. Because the court erred in incorrectly declaring the law governing the case, in the instructions to the jury.

"5. Because the court erred in misdirecting the jury as to the law governing the case in its instructions to the jury.

"6. Because the court failed to direct the jury in a material matter necessary for their information.

"7. Because the instructions as given by the court are a comment on the evidence.

"8. Because the court omitted to take by a proper instruction in writing from the jury's consideration certain illegal, incompetent, immaterial, irrelevant and improper testimony introduced by the State and admitted over and against the timely objection of the defendants.

"9. Because the court erred in refusing to give the instructions asked for by defendants at the close of the State's case."

I. Appellants raise two points which can be best considered together. It is contended:

1. That there is no evidence showing guilt on the part of Roy Lewis.

2. That the admission of evidence as to the killing of Dillon was error.

In State v. Bailey, 190 Mo. l. c. 280, this court quoted from People v. Molineux, 168 N. Y. 264, as follows:

"Generally speaking, evidence as to other crimes is competent to prove the specific crime when it tends

to establish first, motive; second, intent; third, the absence of mistake or accident; fourth, a common scheme or plan embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the others; fifth, the identity of the person ·charged with the commission of the crime on trial.''

We hold that all the evidence in the case, including the circumstances of the killing of Dillon, shows clearly a conspiracy to murder whenever necessary in the course of defendants' business of steal-

Conspiracy.

ing. They were in possession of two garages, covers to which they fled when the police were in pursuit. They had two stolen automobiles. They had just returned from an all-night raid upon another city. Each had a gun on his person concealed in an unusual place, Roy's in the middle of his back, and Ora's in his clothes in front of him. That shows a purpose and intent on their part that the police should fail to discover the guns. After a rather diligent search, we have failed to find any authority on the question as to whether the carrying of a concealed weapon has, in itself alone, any tendency to prove an intent to take human life. In the absence of such an authority, we will concede that, without further showing, an intent to murder cannot be imputed either to the man who unlawfully carries concealed weapons, or to the unarmed thief. But when those two characters are combined in one, the armed thief, it is like taking two chemicals, each in itself inert, and combining them into a dangerous explosive. It would be doing violence to human reason to say that such a combination does not tend to show an intent to murder when the time comes. Where two brothers, in daily association, and with the evident knowledge on the part of each that the other is so armed, go about their dishonest work, such facts strongly indicate a mutual understanding (conspiracy) that an arrest shall be thwarted by killing the officer. The force of that evidence is increased when the brothers carry their guns, as in this case, in such

manner as to prevent, if possible, the discovery of such weapons. Such indication of mutual understanding is further increased in this case, by the fact that upon the crack of the gun both the defendants together fled headlong from the place, slaughtering Dillon who attempted to interrupt them in their mad get-away.

II. Errors, if any, in the giving, or refusal, or failure to give instructions are not properly set out in the motion for a new trial. The motion only mentions the instructions generally, and does not call attention to any specific proposition.

Motion for New Trial.

As a consequence, those points are not before us for review. [State v. Othick, 184 S. W. 106; State v. Rowe, 196 S. W. 7; State v. Selleck, 199 S. W. 129.] However, as this is a capital case, we have set out the instructions so far as we have deemed necessary to cover the material points raised by counsel. We think that the defendants have not suffered in those particulars.

The instruction on murder in the second degree was properly refused, as there was no evidence on which to base it. [State v. Hopper, 71 Mo. 425; State v. Umble, 115 Mo. 452; State v. Fairlamb, 121 Mo. 137; State v. Wooley, 215 Mo. 620.]

The tenth instruction on the subject of reasonable doubt fully complied with the requirements stated in State v. Christian, 258 Mo. l. c. 397.

The eleventh instruction as to a reasonable doubt about any one fact necessary to show guilt, when considered in connection with the tenth instruction, is favorable to the defendants, and they have no right to complain.

III. Appellant's counsel makes several severe criticisms of the instructions, of which the following is a sample:

"I will now proceed with Instruction No. 2 and quote such part of same as I believe is undoubtedly erroneous:

" 'The court instructs you that there is no evidence in the case which would warrant you in finding that Roy Joe Lewis was present at the scene of the shooting for the purpose of aiding or abetting the same, or that he, by word spoken, or act committed by him, at the time of the shooting, aided or abetted or encouraged the same, and the only ground upon which he could be held legally responsible for said shooting would be that it was done in the execution of a conspiracy or agreement to which he was a party.'

*Conspiracy.*

"This part of Instruction No. 2 virtually tells the jury that even though the defendant Roy Joe Lewis was not present to aid, encourage or abet, he could be held legally responsible as a party to the conspiracy—an almost ludicrously self-evident proposition—that it broadly hinted to the jury that if they found anything in Roy Joe Lewis's presence there which might be construed to amount to more than bare presence, then they might convict Roy Joe Lewis. The real vice of this instruction is that it permitted the jury to convict said defendant without requiring them to find that there was a conspiracy in existence. To make it a question for the jury as to whether or not a conspiracy existed, that part of the instruction should have been ended with the words 'if you find that there was such a conspiracy or agreement, to which Roy Joe Lewis was such a party.'

That instruction contains just two propositions:

1. It tells the jury that there is no evidence showing that Roy was present for the purpose of aiding in the death of McKenna or that he did so aid. That defendant certainly has no right to complain of that part of the instruction. It is all in his favor.

2. It tells the jury that the only ground on which Roy could be convicted was by showing that he was a party to such conspiracy. "Ludicrous" as it may appear to counsel, if there was such a conspiracy, both defendants were guilty, though one of them at the time had no purpose or intent to aid, and did not aid, in

such killing. A conspiracy makes each responsible for the acts of the other done in the scope of such conspiracy. [State v. Walker, 98 Mo. 95; State v. Vaughan, 200 Mo. 1. c. 20.] *Qui facit per alium facit per se.* The situation would be very different if there were any evidence showing that such killing was over Roy's protest. If there had been such protest the conspiracy would have been at an end, and the mutual responsibility would have ceased. But the mere absence of evidence showing participation in act or purpose on the part of Roy at the time of the killing does not amount to a protest or a termination of the conspiracy.

IV. We find that counsel for defendants in the trial court taxed severely, without exhausting, the judicial patience; that he was sometimes discourteous and insulting to opposite counsel and to witnesses. He prolonged the cross-examinations often to a wearisome length. On the other hand, he was vigilant

Competency of Counsel.

and tireless. He, after a prolonged fight, beat the State on the question as to whether the statements of the defendant Roy Lewis should be admitted in evidence. It may be well said that he won the only point there was in the case which the awful facts left it possible for him to win. He did not, in his motion for a new trial, properly raise the points on the giving and refusing of instructions. But the cases cited show that other lawyers, of good standing in the State, have made the same mistake, and this court has not deemed it proper to save their clients from the consequences of such error. The case was fairly presented to the jury by the circuit attorney and his assistant. The trial judge guarded with vigilance the rights of the defendants. We are unable to see that they could have fared any better with different counsel.

The judgment is affirmed.

*White, C.,* concurs.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court and it is ordered that the judgment pronounced by the trial court

be executed. All the judges concur. Friday, April 5, 1918, fixed as date of execution.

## ON MOTION OF ORA LEWIS TO MODIFY JUDGMENT.

ROY, C.—This appellant was sentenced to death by the trial court on January 10, 1917.

The Act of April 13, 1917 (Laws 1917, p. 246), provides:

"Section 1. *Capital punishment not to be imposed.* From and after the taking effect of this act it shall be unlawful in this State to take human life as a punishment for crime, and no court shall impose capital punishment as a penalty for crime.

"Sec. 2. *Repealing conflicting laws.* All acts and parts of acts inconsistent or in conflict with this act are hereby repealed."

But that statute must be interpreted in connection with other statutes. Our Revised Statutes provide:

"Sec. 8063. *Repeal of law not to affect punishment for offense committed while in force.* No offense committed, and no fine, penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, shall be affected by such repeal; but the trial and punishment of all such offenses, and the recovery of such fines, penalties and forfeitures, shall be had, in all respects, as if the provisions had remained in force."

"Sec. 8064. *Actions pending, how affected by repeal of law.* No action, plea, prosecution, civil or criminal, pending at the time any statutory provisions shall be repealed, shall be affected by such repeal; but the same shall proceed, in all respects, as if such statutory provisions had not been repealed, except that all such proceedings had after the time of taking effect of the Revised Statutes shall be conducted according to the provisions of such statute, and shall be in all respects subject to the provisions thereof, so far as they are applicable."

Those sections' originated in the revision of 1835, p. 385, secs. 37 and 38.

Undoubtedly the Legislature in 1917 had the power to abolish capital punishment as to all offenses whether committed before or after the enactment of the new law, but it did not do so. It must be presumed that the new law was enacted with the intent that it should take its place alongside of other statutes, and be construed in connection with them. The last quoted sections provide as to the effect of future repealing laws, that they shall not affect the punishment for a previous violation of the statute.

Appellant relies on Section 4920 of our Revised Statutes. That section is, in effect, a repetition of Sections 8063 and 8064 above quoted, but with this proviso:

"*Provided*, that if the penalty or punishment for any offense be reduced or lessened by any alteration of the law creating the offense, such penalty or punishment shall be assessed according to the amendatory law."

That language certainly does not apply to this case. Here the punishment was assessed, the sentence pronounced and the judgment entered before the enactment of the new law. The appeal was pending when the new law went into effect.

Under Section 5314 of the statutes, the duty of this court on affirmance, is to direct the execution of the judgment affirmed.

Section 5316 provides that this court on appeal may correct any error of the trial court as to the time or place of imprisonment. It was held in Ex parte Gauss, 223 Mo. 277, a *habeas corpus* case, that the court did not have, in that proceeding, any power under the last quoted section to correct the judgment below as to errors other than as to the time and place of imprisonment. It follows that, as the sentence and judgment in this case were prior to the going into effect of the new statute, they were correct, and in no way erroneous at the time of their entry, and the new law, when interpreted in con-

nection with the other statutes referred to, does not affect them in any way.

We think that there is no merit in the motion for a rehearing, or in the motion to transfer to Court in Banc.

*White,* C., concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.