AUGUSTA COOPERAGE COMPANY v. DOWDY.

Opinion delivered June 20, 1921.

1. SALES—EXISTENCE OF CONTRACT—JURY QUESTION.—In an action against a buyer for breach of a contract to purchase all of the ash and gum logs to be cut and delivered during the logging season from the sellers' lands, not to exceed one million feet, where the buyer denied having made such a contract, *held* that the question whether the buyer had entered into such a contract under the evidence was for the jury.

2. CORPORATIONS—AUTHORITY OF AGENT—JURY QUESTION.—Whether the agent of a cooperage company had apparent authority to make a contract to purchase logs *held* for the jury.

3. FRAUDS, STATUTE OF—PART PERFORMANCE.—An oral contract to purchase the entire output of logs during a logging season, not to exceed one million feet, is not void under the statute of frauds where the buyer had accepted and received a part of the logs so sold.

Appeal from Woodruff Circuit Court, Northern District; *J. M. Jackson,* Judge; affirmed.

*J. F. Summers,* for appellant; *Geo. B. Webster,* St. Louis, Mo., of counsel.

1. Granting that there was a contract, it was within the statute of frauds and not enforceable. The timber claimed was of more than $30 in value, and there was no memorandum of writing, nor any delivery under the alleged parol contract. 79 Ark. 338; 20 Cyc. 247.

2. The instructions given for appellee are vague and indefinite and assume as a fact that Thoma had authority to make the alleged contract. There is no proof in the record to show the quantity of logs nor any place of delivery.

3. The uncontradicted evidence shows that Thoma did not have authority to make a future contract for a season's output of logs. On the question of agency alone for the failure of proof the cause should be reversed. 105 Ark. 111. See, also, 174 S. W. 227; 215 *Id.* 646. Instruction No. 5 for appellee is especially vicious and misleading.

4.   It was error to refuse the instructions asked by appellant, as they clearly state the law.   97 Ark. 613.

5.   A peremptory instruction should have been given for appellant.   132 Ark. 155; 126 *Id.* 405.

*H. M. Woods* and *Chas. F. Cole,* for appellees.

1.   The contract was not within the statute of frauds. Appellees alleged and proved that they contracted to appellant for that season's entire output of logs and appellant accepted and paid for three separate lots of logs. This was an acceptance of part of the logs and removed the statutory bar.   C. & M. Digest, § 5864; 79 Ark. 338.

2.   Thoma, who acted for appellant in making the contract, had authority to make it.   Appellees dealt with him as a general agent, and had authority to bind appellant.   The presumption is, in the absence of notice to the contrary, where one deals with an admitted agent that the agent is acting within the scope of his authority, and the burden is on the principal to show the contrary. 100 Ark. 360; 112 *Id.* 63; 137 *Id.* 418.   No attempt was made to show that appellees had any notice of any limitations of Thoma's authority, and the proof shows that they had none.   105 Ark. 111, relied on by appellant, is not in point.

3.   A contract was proved, and it was not void under the statute of frauds.   Under the undisputed testimony plaintiffs were entitled to recover, and the verdict is not excessive but sustained by the proof.

HUMPHREYS, J.   Appellees instituted this suit against appellant in the Woodruff Circuit Court, Northern District, to recover $1,568.40 for 6,000 feet of ash and 60,000 feet of gum logs alleged to have been delivered on the river at Lockhart Ferry, pursuant to an oral contract whereby appellees agreed and contracted to sell to appellant all the ash and gum appellees could cut and deliver during the season with three teams and two saws from appellees' lands in Black River bottom.

Appellant interposed the defenses to the cause of action that (1) it did not enter into the alleged contract; (2) its agent was not authorized to make the alleged

contract, and (3) if such contract was made, it was contrary to the statute of frauds and void, because the value of the logs was more than $30, and the contract was not in writing, signed by the parties.

Relative to the contract, appellees introduced the following witnesses: Arthur Wilson, Albert Wilson, R. A. Dowdy, Cecil Sexton and G. A. Patterson.

Arthur Wilson testified that, as the representative of appellees, he entered into an oral contract with Pete Thoma, as representative of appellant, on or about the 26th day of August, 1920, to sell appellant all logs, during the logging season of 60 to 90 days, that he could cut and deliver with two saws and three teams, off the appellees' lands in Black River bottom; that the price agreed upon was $22.50 a thousand for soft woods, and $35.00 for ash; that Thoma scaled and took up three lots of logs under the contract, and, after the fourth lot of about 66,671 feet was piled on the bank, the place agreed upon for delivery, Thoma refused to scale and take them up; that he said he would write the company; that, later, he stopped on his way up the river and said: "Do you want your logs scaled?" and I said "Yes." "I asked him if he would allow another scale, and he said 'Yes.'" The company's raftsman rolled 4,000 feet of this lot of logs in the river and they were taken up. The others were left on the river bank.

Albert Wilson testified that he heard a conversation between Arthur Wilson and Pete Thoma relative to the purchase of the Dowdy timber; that, after Thoma bought his timber, he introduced the parties; that Thoma told Wilson he would take all the logs he could put out, up to a million feet, and pay $22.00 a thousand for soft woods and $35.00 for ash; that Wilson said he would run two saws and three teams; that he received appellant's check for the logs he sold it; that Thoma bought a great many logs up and down the river for appellant.

R. A. Dowdy testified that appellees employed Arthur Wilson as their foreman to put out their timber in Black River bottom; that he was informed by Wilson

that Thoma had offered to take all Wilson could put out
with his force during the season, for $22.50 a thousand;
that he told Wilson to let Thoma have all the logs; that
the first scales contained a small amount of ash, and he
accepted checks in full payment of the statement, in
which a small amount of ash was figured in at $27.50 and
$22.50 a thousand; that he had not conferred at the time
with Wilson and did not know that the agreed price for
ash was $35.00 a thousand; that, after Thoma refused
to take up the logs, he saw E. J. Chalfant, the manager of
appellant company, and Mr. Chalfant said: "If Thoma
agreed to take your logs, he will do so;" that, afterward,
he saw Thoma in the presence of Wilson, and Thoma did
not deny the contract, but said appellant instructed him
not to take up any more logs on the bank of the river;
that Thoma raised the question about appellees having
sold logs to others; that they never let anybody else have
logs after Thoma began taking them.

Cecil Sexton testified that he heard Pete Thoma tell
Arthur Wilson to get out all the logs he could, stating
how many of them he would take at the same price; that,
after the logs in controversy were on the bank, he heard
Thoma tell Wilson as he came back down the river he
would take up the logs.

G. A. Patterson testified that, when Thoma was
scaling and taking up logs, he heard him tell Wilson to
go ahead and get out all the logs he could; that he would
take them; that part of the last batch put on the bank by
Wilson was rolled in the river and put in appellant's raft.

Several of the witnesses testified that Thoma selected
binders and floats for rafting the logs on appellees' land,
and had them cut and hauled to the river bank for that
purpose.

Relative to the contract, appellant introduced Pete
Thoma, M. F. Collins, Z. S. Massey and E. J. Chalfant.

Pete Thoma testified that he had no authority to buy
logs for future delivery; that the only authority given
him was to purchase logs on the bank of the river and to
buy binders and floats to raft them; that he did not buy

the entire output of appellees for that reason; that he bought three separate lots, on three separate and distinct contracts, from appellees; that he told Wilson as he went up the river that he would scale and take up the logs on the bank of the river, now in controversy, as he came back, but at that time he had not received instructions from appellant company to quit buying logs; that he received notice after that time and refused to scale and take up the logs on the bank as he came back; that he only bought binders and floats which were necessary to raft the logs which he bought outright on the banks of the river as he passed along; that he bought no logs for future delivery.

M. F. Collins testified that, on September 22, 1920, he was at the Lockhart Ferry and heard a conversation between Thoma and Wilson; that Thoma asked Wilson if he wanted his logs scaled, and Wilson said "No;" that Thoma said the log market might go down.

Z. S. Massey, the log superintendent for appellant, testified that Thoma was under him, and he under E. J. Chalfant; that the extent of Thoma's authority was to buy the logs on the bank and binders and floats sufficient to raft them without waste; that Thoma bought logs up and down the river for appellant for five months, and bought one and a half million feet.

E. J. Chalfant testified to the same effect with reference to the authority conferred upon Thoma. He further testified that Mr. Dowdy came to him, and, in trying to convince him that appellant should take the logs left on the bank of the river, he told him that Thoma had gone so far as to point out trees on their land to be cut for floats and binders; that he responded to Mr. Dowdy's argument that he would take any logs which had been pointed out by Thoma and cut and delivered for that purpose; that he did not tell Dowdy that, if Thoma had contracted for the logs, he would take them.

At the conclusion of the evidence, appellant made a request for a peremptory instruction, which was re-

fused, and the refusal of the court to give this instruction is urged as reversible error.

There is a sharp conflict in the evidence as to whether Thoma agreed to buy appellees' entire output of logs to be cut and delivered in the use of two saws and three teams, during the logging season, lasting from 60 to 90 days, not to exceed a million feet, at a stipulated price. On account of the conflict in the evidence, this issue became strictly a jury question, and it was not error to submit that issue to the jury.

Whether or not there is any dispute in the evidence as to Thoma's authority to make a contract for the future delivery of logs has given us some pause, but, after a very careful consideration of the evidence, we have concluded that a reasonable inference might have been drawn from all the facts and circumstances in the case to the effect that he had apparent authority to make the contract. He was the only representative of appellant on the ground, and for five months bought a large number of logs, estimated at a million and a half feet, up and down the river. There was evidence tending to show that, when the dispute arose over the scaling and taking the logs up, the superintendent made no point that Thoma had exceeded his authority, but, on the contrary, said that if Thoma had agreed to take the logs, he would scale and take them up. Dowdy testified that Chalfant made a statement to that effect, and, if he did, it indicates that Thoma did not exceed his authority in making the contract. There being some substantial evidence therefore tending to show that Thoma acted within the apparent scope of his authority in making the contract, it was not error to submit that issue to the jury.

If Thoma had authority to make a contract for future delivery of logs on the bank of the river and made such a contract with appellees, through their agent, the contract was not void, as being contrary to the statute of frauds, for the undisputed evidence shows that he scaled and took up three batches of logs, as well as binders and floats with which to raft them. There was no controlling

issue, therefore, in the case, sustained by the undisputed evidence, which warranted a peremptory instruction, and the court properly refused appllant's request for a directed verdict.

Objections are urged to instructions given and refused. We have carefully examined both. We think every issue presented by the pleadings and evidence was presented to the jury under proper instructions.

No error appearing, the judgment is affirmed.