THE STATE v. JOHN BUXTON, Appellant.—22 S. W. (2d) 635.

Division Two, December 11, 1929.

*Sherman & Maughmer* and *R. F. Mumford* for appellant.

*Stratton Shartel*, Attorney-General, and *A. M. Meyer*, Assistant Attorney-General, for respondent.

BLAIR, P. J.—By an information filed in the Circuit Court of Buchanan County, Leo Dennis and Viola Dennis, his wife, and the appellant were jointly charged with robbery in the first degree. Appellant was separately tried and found guilty and the jury fixed his punishment at imprisonment in the state penitentiary for a term of fifteen years. From the judgment entered on such verdict an appeal was granted to this court.

The sufficiency of the evidence to authorize conviction is not challenged and hence a brief statement of facts will suffice. The State's evidence tended to prove that, shortly after midnight on January 20, 1928, Huber Forgey was accosted by two armed men on the porch of his residence in St. Joseph and compelled at the point of a pistol to part with $65 in money. Forgey testified to the identity of the appellant as the man who held the weapon. The two men compelled Forgey to go with them a short distance from his home before releasing him, and this enabled him to secure the license number of the automobile used by the robbers. The automobile proved to be the property of appellant's co-defendant Leo Dennis. This information led to the arrest of appellant and Dennis and his wife.

Leo Dennis entered a plea of guilty and was sentenced thereon to imprisonment in the penitentiary for five years. A *nolle prosequi* was entered as to Mrs. Dennis. Dennis and his wife were then used as witnesses by the State, being put on in rebuttal. Mrs. Dennis was the niece of appellant.

Leo Dennis testified that he and his wife went to appellant's rooms on the morning of January 20th, and that the three left there after dark that evening; that all three of them were drinking; that, while driving along the street, appellant had the automobile stopped and he got out and held up a man on the sidewalk and secured a small amount of money; that afterwards they

drove to the western part of St. Joseph and held up another man, and that the robbery of Forgey on his front porch occurred later. His testimony as to the last robbery corroborated that of Forgey. The testimony of Mrs. Dennis substantially agreed with that of her husband.

The story of appellant was that he and Dennis and his wife started to the interurban station to meet a friend of Mrs. Dennis, and that they met the eight and nine o'clock cars and the friend failed to arrive. In the meanwhile the three of them had secured a number of drinks and appellant became sick before the time for the arrival of the ten o'clock car and Dennis and his wife drove him home in the automobile to his rooms in South St. Joseph and that he immediately went to sleep in an arm chair without undressing and that sometime during the night someone undressed him and put him to bed.

Appellant denied that he was with Dennis after ten o'clock, P. M., and said that he did not participate in the robbery of Forgey. He produced witnesses who testified to the fact of putting him to bed about midnight, which was approximately about the time of the Forgey robbery. There was also testimony that appellant's twin brother was wearing appellant's brown overcoat at the time of the robbery. This testimony was designed to meet Forgey's testimony that appellant was wearing a brown overcoat when the robbery occurred. One Hunsaker testified that he was held up and robbed near Tenth and Sylvanie streets on the night of January 20th, and identified appellant as the man who robbed him.

On his examination in chief and in response to a question appropriate for the purpose and put to him by his own counsel, appellant had testified that he did not hold up or help hold up anyone that night. Defendant also offered testimony tending to show his good character.

The admission of proof of robberies by appellant on the night of January 20th, other than the robbery charged in the information, is stoutly asserted to constitute prejudicial error. That such proof was damaging to the defense must be conceded. It is not contended by the State that such proof is ordinarily admissible in a criminal prosecution. But the learned Attorney-General insists that it was not error to admit proof of that character under the peculiar situation of the record in this case, because such evidence was proper as tending to show that the robbery charged in the information constituted part of a general scheme to commit a series of robberies and because appellant opened up the issue himself by testifying that he had not held up or helped hold up any one that night and that it was proper to offer such testimony in rebuttal of appellant's alibi evidence.

People v. Molineux, 168 N. Y. 264, 61 N. E. 286, has frequently been quoted with approval by this court. There the rule as to the admissibility of proof of the commission of other crimes by the person on trial was clearly and concisely stated as follows:

"Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish: first, motive; second, intent; third, the absence of mistake or accident; fourth, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; fifth, the identity of the person charged with the commission of the crime on trial." [State v. Spray, 174 Mo. l. c. 582, 74 S. W. 846; State v. Bailey, 190 Mo. l. c. 280, 88 S. W. 733.]

It is obvious that proof of other crimes would have no tendency to prove the motive or intent which actuated appellant in the commission of the acts constituting the crime with which he stood charged in the information. Nor could it be said that such proof tended to show the absence of mistake or accident in the commission of such acts. Also proof that appellant robbed another person or other persons in the same city on the same evening could have no tendency in itself to identify appellant as the person who robbed Forgey. If proof of other crimes was admissible at all, it must have been because it tended to show a common or general scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tended to establish the fact of the commission of the other.

It certainly is not enough to show that the person on trial committed one or more other crimes of the same general nature in the vicinity of the place where he is charged with committing the crime for which he is on trial and that he committed such other crime or crimes at approximately the same time. To be admissible proof of the commission of another crime or other crimes must have some legitimate tendency to prove that the accused committed the crime for which he is being tried.

Almost the identical facts appear in State v. Spray, supra. There the charge was robbery, as it is here. The prosecuting witness detailed the facts in relation to the robbery and identified Spray as the robber. Further facts are thus stated in the opinion.

"Witness Arthur Damschroeder was introduced, and he, over the objections of the defendant, detailed with equal particularity the perpetration of a robbery upon the witness. The location or place of the assault and robbery of Damschroeder is, according to the record, five or six blocks from the first, a distance of half or three-quarters of a mile. The time as fixed between the two offenses is very short. An examination of this record, while the two offenses were in the same locality and were closely followed in

point of time, discloses that they were not so closely allied as to constitute one transaction; but were separate and independent offenses.''

In the Spray case it was sought to justify the admission of the proof of another crime on the ground that it was admissible to show the intent of the defendant. , But this court denied its admissibility for any such purpose and, further, clearly held that such proof was not admissible under the facts in that case on the ground that proof of another crime had any logical connection with the crime for which Spray was on trial and, in that connection, Fox, J., said:

''It may be urged that it was near the same time and locality. So were the larcenies committed in the Goetz case in the same city, near the same time and locality, and it appears in that case that the proof embodied larcenies committed in various stores, yet they were separate and distinct offenses, and were ruled to be inadmissible. The testimony of a separate offense must have some tendency to prove the charge in the indictment. It is admissible only on the ground that it has some logical connection with the offense proposed to be proven. It is clearly not admissible on the theory that if a person will commit one offense, he will commit another.''

In the early case of State v. Goetz and Martin, 34 Mo. 85, referred to in the foregoing quotation, the defendants were tried for shoplifting and the State was permitted to show ''that, on the same day, and near the same hour, and at stores in the vicinity of Jaccard's, the defendants had feloniously taken other articles from other persons.'' BAY, J., said: ''The offenses proved were separate and distinct, and the defendants might have been indicted for each and every one of them. Though committed on the same day, and under circumstances of a similar character, yet they are not so blended or connected that the investigation of one involves an inquiry into the other.''

The rule laid down in the Goetz and Spray cases has been consistently followed. [State v. Austin (Mo. Sup.), 234 S. W. 802: State v. Saunders, 288 Mo. 640, 232 S. W. l. c. 977; State v. Preslar (Mo. Sup.), 290 S. W. 142.]

In support of its contention that proof of the commission of other robberies by appellant was admissible as part of the general scheme to commit a series of robberies, the State relies upon State v. Carroll and Jocoy, 288 Mo. 392, 232 S. W. 699, and State v. McCombs (Mo. Sup.), 259 S. W. 440.

The McCombs case is disposed of by the observance that, while the opinion discloses that proof of another robbery was admitted by the trial court in rebuttal, it also appears that no exception was

saved to the admission of such testimony and its admissibility is not even discussed in the opinion.

The Carroll-Jocoy case is distinguishable from the case at bar. The evidence of other crimes seems to have come into the case solely as part of the voluntary confessions of the defendants that they started out from St. Louis on a reckless criminal expedition across the country, stealing and robbing, to further their progress toward some unnamed destination. The issue of the admissibility of proof of other crimes was raised for the first time by a motion to strike out from the statements of the defendants evidence of other crimes and such motion was made after such statements had been read to the jury. Hence, this court sustained the ruling of the trial court in part on the ground that the objection came too late. While the admission of such testimony was also approved on the ground that the crimes were so related to each other that the proof of one tended to prove the others (relying on State v. Lewis, 273 Mo. 1. c. 531, 201 S. W. 80; State v. Bailey, 190 Mo. 257, 1. c. 280, 88 S. W. 733, and State v. Cummins, 279 Mo. 192, 1. c. 207, 213 S. W. 969), the possibility that the evidence was not competent was suggested when the court discussed the failure of defendants to make timely objection.

The crimes committed by Carroll, Jocoy and Shirer all had some relation to the general criminal enterprise. All of the other crimes were robberies or larcenies which were undertaken to aid the progress of the criminal expedition in which these men were engaged. In this respect that case differs widely from the case at bar. So far as the evidence here discloses each of the robberies was the result of an impulse born of the moment when the opportunity to rob presented itself. There is nothing in the record to prove the existence of a preconceived and deliberate criminal foray on the part of appellant and Leo Dennis and his wife, unless the mere fact of the commission of several robberies establishes such general plan.

In State v. Lewis, supra, the evidence of the commission of another homicide was justified on the ground that "all the evidence in the case, including the circumstances of the killing of Dillon, shows clearly a conspiracy to murder whenever necessary in the course of defendants' business of stealing."

In State v. Bailey, supra, one of several defendants jointly charged was on trial for murder, and the State was permitted to show an assault upon another person earlier the same evening from which person a revolver was feloniously taken. The defense was self-defense and the State was permitted to show the fact of the first assault upon a non-union hack driver as having some tendency to show that the assault on the second hack driver, resulting in his death, was part of a scheme to terrorize non-union drivers in the

hack drivers' strike and, further, because the weapon used in the fatal assault was the one taken during the commission of the first assault. Such proof might well have been admitted also as tending to disprove Bailey's self-defense theory, in that the attack upon the second non-union driver was part of the deliberate plan to terrorize non-union drivers.

State v. Cummins, supra, is clearly distinguishable on its facts. Cummins was indicted for burglary and larceny. He did not personally commit the crime. The evidence of the State was that Cummins, who was a police officer, encouraged and protected the actual burglar-thief and participated in the loot under a general plan and conspiracy to that end. Hence, it was clearly proper to show the several burglaries and larcenies committed in the carrying out of the conspiracy. Proof of the commission of other crimes and the division of the fruits thereof was clearly admissible as showing Cummins's connection with the burglary charged in the indictment. The testimony of persons other than Franke, the co-conspirator, was also properly admitted to corroborate Franke's testimony as an accomplice.

None of the cases cited by the State or those just considered go far enough to justify the proof of independent crimes in the case at bar, and its admission must be regarded as reversible error unless, the State was entitled to its admission in rebuttal of appellant's testimony that he had not held up or helped hold up any person that night or the evidence tending to show that appellant was somewhere else than at the scene of the robbery of Forgey at the time it was committed.

The testimony concerning the commission of other robberies showed that they were committed prior to the Forgey robbery and does not disclose that they were committed after ten o'clock, the time fixed by appellant as the time of his arrival at his rooms. Hence, such proof of other robberies had no legitimate tendency to rebut appellant's evidence tending to show that he was some place else at the time of the Forgey robbery, even assuming that such proof might be admissible in a proper case, which we do not here need to consider or decide.

Such testimony cannot be said to have been admissible to rebut appellant's direct testimony that he had not held up or helped to hold up any person that night. Whether or not appellant had robbed any person other than Forgey that night or any other time was entirely immaterial to the issue raised by the charge contained in the information. Appellant's testimony upon such immaterial matter could not be impeached by showing that it was in fact untrue.

The admission in evidence of proof of independent and unconnected robberies by appellant cannot be justified on this record.

Such testimony was necessarily damaging and improperly prejudicial and its admission therefore constituted reversible error.

Such conclusion makes it unnecessary to consider complaints concerning the overruling of appellant's applications for continuance and change of venue, as those questions will not likely recur upon a retrial. The same may be said concerning alleged improper argument of counsel for the State.

Instruction 5, to the effect that voluntary intoxication is no excuse for the commission of crime, should not have been given. Assuming that it was a correct and accurate statement of a general proposition of law, its giving was not warranted by the evidence in this case. Appellant denied the commission of any offense and did not offer proof of his intoxication in mitigation of or excuse for an admitted act. He made no pretense that he was so intoxicated that he did not know what he was doing. He denied participation in the Forgey robbery outright.

Testimony tending to show that appellant went to sleep in a chair after he reached home and was later undressed and put to bed by relatives merely went to support his alibi and to show that he was physically incapable of being at the scene of and committing the robbery, at the time it was shown to have occurred, by reason of his complete stupefaction from intoxication. Whether the giving of Instruction 5 in itself constituted reversible error on the record before us, we need not decide. It had no place under the testimony in the record which we are considering and should not be given upon a retrial, if the evidence upon the question of intoxication is the same.

The judgment is reversed and the cause remanded for another trial. *White, J.,* concurs; *Walker, J.,* dissents.