# THE STATE v. WALTER F. PATTERSON, Appellant.

## Division Two, May 29, 1917.

1. **ROBBERY: Information: Extorting Money by Threat of Exposure.**
   **Particular Description of Offense Involved in Threat.** It is not
   necessary that the information describe with particularity the
   offense involved in the defendant's threat by means of which
   the crime of robbery or blackmail was consummated, nor is it nec-
   essary, in order to make the crime of robbery complete, to prove
   that the threat was couched in language that completely described
   the crime threatened to be exposed. An information charging
   robbery consummated by threats of exposure, in so far as a
   description of the threatened accusation is material, sufficiently
   apprises the defendant of what he has to meet when it names
   the crime which he may identify with his alleged threat. Sodomy
   is made a felony by statute (Laws 1911, p. 198), and an information
   charging that defendant "did verbally accuse and threaten one
   Peter Ibsen . . . of having committed the crime and offense
   of sodomy upon and with the said Edward C. Butler, with the
   felonious intent then and there and thereby to extort from the
   said Peter Ibsen certain sums of money and notes," etc., sufficiently
   describes the offense of sodomy. [Distinguishing State v. Sekrit,
   130 Mo. 401.]

2. ———: **Blackmail: Threat to Accuse of a Crime.** The words "ac-
   cuse or threaten to accuse" used in the statute, in a prosecution
   for robbery and blackmail effected by accusing and threatening
   to accuse the victim of a crime, do not mean solely to threaten
   to lodge a formal complaint in court or to accuse by such means.
   Even if they meant that, the evidence in this case was sufficient
   to make out a case against defendant. But the threat is within
   the meaning of the statute if it includes exposure and publicity
   and imputes a crime as a means of inducing the threatened per-
   son to pay money to the accuser.

3. ———: **Variance: Purchase of Paper Used as Means of Blackmail.**
   Testimony by the victim that he gave notes to the defendant for
   the purpose of getting back from him a damaging paper he had
   signed at the time the threats of exposure were made, does not
   constitute a variance from the charge that the victim gave the
   notes on account of the threat to accuse him of a crime, where
   the paper was held by defendant as a part of his scheme to extort
   by threats money and notes from his victim.

4. ———: **Evidence of Similar Crimes: Intent.** Evidence showing
   crimes, or attempts to commit crimes, of a character like the one

charged, is admissible, as tending to show the intent with which the crime charged was committed or attempted, in a prosecution for robbery and blackmail effected by threats to accuse the vic-tim of a crime and to expose him. Where the charge was that de-fendant, by accusing and threatening to accuse Ibsen of a crime, obtained money and notes from him, it was not error for the State to introduce a witness named Boehlinger to testify that somewhere near the same time defendant attempted to extort money from him by the same means.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

Affirmed.

*James M. Rollins, E. A. Halter* and *Joseph Reilly* for appellant.

(1) The demurrer to the information, the demurrer at the close of the State's case and the demurrer at the close of the whole case should have been sustained for the reason that the information failed to set out the language of the accusation and threat *in haec verba,* alleged to have been made by the defendant. State v. Hayward, 83 Mo. 307; 1 Bishop, Crim. Prac., sec. 81. The information is based on Sec. 4532, R. S. 1909. It pleads only a con-clusion, and does not plead the necessary constitutive facts of a valid information. State v. Murphy, 141 Mo. 270; State v. Miller, 132 Mo. 267; State v. Chandler, 132 Mo. 165. The prosecuting witness positively and re-peatedly swore that he gave the notes and gave the money to Patterson for no other reason than to have Patterson get back and destroy his signed statement from Deuser. The evidence was in total variance with the allegations of the information. State v. Parris, 259 Mo. 435; State v. Brewer, 259 Mo. 448; State v. Middleton, 259 Mo. 449; State v. Loyd, 259 Mo. 449. (3) The entire record of this case is void of any "threat to accuse" or of "any accus-ing" of the prosecuting witness, Ibsen. The State, there-fore, utterly failed to make a case against the defendant, Patterson. To accuse is to bring a charge against one be-fore some court or officer and the person thus charged is

·the accused.  A threat to accuse of a crime does not refer to accusing by way of railing, or slander, or bearing false witness under a false accusation made by others, but the institution or participation in the institution of a criminal charge before some one held out as competent to entertain such a charge as a lawful course.  According to Black's Dictionary of Law to "accuse is to bring a formal charge of crime before a competent court or officer."  The defendant did not make any charge against Ibsen, and did not threaten to go to any prosecuting officer and "accuse" Ibsen.  The testimony of O. E. Boehlinger as to a so-called "similar crime" was incompetent. The Boehlinger matter was no crime.  State v. Hyde, 234 Mo. 250; State v. Palmberg, 199 Mo. 233; State v. Parker, 96 Mo. 382; State v. Lockett, 168 Mo. 480; State v. Martin 34 Mo. 85; State v. Teeter, 239 Mo. 475.  Where another distinctive offense is relied on to show intent, the other act must be of a precisely similar nature as the act for which the defendant is on trial.  Underhill on Criminal Evidence, sec. 89; State v. Hyde, 234 Mo. 224. Proof of another offense is not admissible in robbery cases for the purpose of showing intent.  State v. Spray, 174 Mo. 569; State v. Wellman, 253 Mo. 362.

*Frank W. McAllister,* Attorney-General, and *John T. Gose,* Assistant Attorney-General, for the State.

(1) The information is sufficient because it fully informs defendant of the offense with which he is charged, and the motion in arrest was properly overruled.  Sec. 5115, R. S. 1909; Regina v. Norton, 8 Car. v. Payne, 671; Hanselman v. People, 168 Ill. 172; Kelley v. People, 192 Ill. 119; Davis v. State, 3 Harris & Johns (Ind.), 478; Bradford v. State, 53 Am. St. 34. Defendant not being informed against for sodomy, and the information not having attempted to set out any of the elements of sodomy, appellant's authorities are not in point.  Sec. 4726, R. S. 1909, made sodomy a felony, but section 1, Laws 1911, p. 198, which repealed said section, did not wipe sodomy off the list of crimes.  The fact that it is not called by

name therein does not exclude sodomy. The language of the statute is broad enough and does include the specific offense of sodomy, buggery, beliation and bestiality. Honselman v. People, 168 Ill. 175; State v. Katz, 266 Mo. 493; State v. Pfeifer, 267 Mo. 23; State v. Wellman, 253 Mo. 302.   (2) The attempt of counsel to limit the meaning of "accuse" to "a formal charge of crime before a competent court or officer" is rather "far fetched," but if that construction of the term were possible, the jury might infer this from evidence of Patterson's claim to be an officer, the badge, call for the patrol wagon, and numerous other circumstances in this case. (3) The admission of the testimony of O. E. Boehlinger was not error. Rex v. Egerton, Russell & Ryan, 375; State v. Nathan, 5 Rich. L. 219; Ballomly v. United States 1 Story, 135; Rex v. Hogg, 19 Eng. C. L. 420; State v. Balch, 136 Mo. 109. The defendant testified that he took the notes as compensation for services and from no criminal intent, motive or design.   Other instances of like character were peculiarly admissible.   State v. Myers, 82 Mo. 562.   In this last case, which was for robbery, the authorities were exhaustively reviewed and it is held that where intent is of the gist of the offense, other similar instances are admissible whether they happen at the same time or before or subsequent.   When defendant claimed the notes were taken for services, then surely the similar attempt upon Bohlinger was admissible to show whether the taking of the notes was with the intent charged in the information. The mere fact of evidence going to prove another felony is not sufficient to exclude it, if, in itself, it be good evidence.   It is not as evidence of a felony, but as evidence of prisoner's intentions that it may be received.   Queen v. Dossett, 2 Cox C. C. 243; 3 Rice, Criminal Evidence, 457-464.

WHITE, C.—Information was filed in the circuit court of the city of Saint Louis, at the April Term, 1915, charging the defendant, jointly with Frederick W. Deuser and Edward C. Butler, with robbery in the third degree under section 4532, Revised Statutes 1909, by threatening

to accuse one Peter Ibsen of a felony and thereby extorting from him certain promissory notes, signed by him and payable to the appellant. The defendant Patterson was granted a severance and on his separate trial was convicted, and his punishment assessed at a term of five years in the penitentiary; from this judgment he appealed.

Ibsen was fifty-three years of age, a native of Denmark, but a naturalized citizen of the United States, and vice-consul for Denmark. According to the evidence produced by the State, Patterson, Deuser and Butler conceived a scheme to extort money from Ibsen, and in pursuance of the scheme Butler, who was a boy about nineteen years of age, sought the acquaintance of Ibsen at the latter's candy store, 912 Olive Street. After Ibsen and Butler had become acquainted they took several car rides together in different parts of the suburbs and on one occasion, about the 13th of August, 1914, while they were at Creve Coeur Lake and in an obscure part of the park, Deuser and Patterson suddenly came upon them and made the threats which are the basis of the charge set out in the information. Presently Deuser took Butler to one side and pretty soon returned with him. Butler was crying, and Deuser said he had "confessed." Before they separated they got Ibsen in a state of fear which remained with him for some days. He was induced to sign a statement which he testified contained only his name, address and occupation, and the name and address of Butler. In the subsequent negotiations Patterson produced this paper in which Ibsen asserted additional words had been written and among them the words "for immoral purposes." The defense claimed that the paper was in the same shape when produced afterwards as when it was signed.

Patterson continued to work on Ibsen's fears with threats of exposure and the next day extorted $97 in cash from him, and a few days later induced him to sign two notes, one for two hundred dollars and one for six hundred and fifty dollars, both payable to Patterson. These notes, which are the ones mentioned in the information, were subsequently paid by Ibsen to some trust

company to whom Patterson negotiated them. On the delivery of these notes Patterson burned in Ibsen's presence the statement which the latter had signed at Creve Coeur Lake.

Patterson, finding Ibsen easy and productive, continued to work him with effect. Some months after he got the two notes he went to Ibsen and told him that he had lost $150 in discounting the notes and induced Ibsen to pay him another $150. Some time in March, 1915, about a month after Patterson got the $150, he again got in communication with Ibsen and told him, "Deuser has played a trick on us," by retaining a photographic copy of the statement Patterson had burned in Ibsen's presence. He produced a note for $800 and induced Ibsen to sign it for the purpose of quieting Deuser. During the previous negotiations Patterson, in his talks with Ibsen, had always mentioned Deuser as the person who was to be feared, intimating that there was danger of both Ibsen and himself getting into trouble through the instrumentality of the police if Deuser were not hushed up.

Ibsen made no complaint to any officer about the matter, but kept it to himself. The $800 note mentioned was found on Patterson while under arrest on another criminal charge; the police department with this clue hunted up Ibsen and discovered the story of his robbery.

Patterson nowhere in his defense denied having received the notes mentioned in the information or having cashed them, but says they were give by Ibsen voluntarily so that he could cash them and raise money "to get Butler out of town." His defense throughout was that Ibsen was guilty and in constant terror lest Butler would charge him with an unmentionable crime. Patterson did not remember receiving the $97 cash, but admitted Ibsen gave him a check for $50 at one time.

I. Defendant demurred to the information, his demurrer was overruled, and he now challenges its sufficiency on the ground that it did not inform the defendant of the nature of the offense with which he was charged.

**Information.**

The information after the introductory parts alleges: "That Walter F. Patterson, Frederick W. Deuser and Edward C. Butler, on the fourteenth day of August, in the year of our Lord one thousand nine hundred and fourteen, at the city of Saint Louis, aforesaid, did verbally accuse and threaten one Peter Ibsen in a certain verbal conversation, which they, the said defendants, Walter F. Patterson, Frederick W. Deuser and Edward C. Butler, had with the said Peter Ibsen concerning him, the said Peter Ibsen, to accuse the said Peter Ibsen of having committed the crime and offense of sodomy upon and with the said Edward C. Butler, with the felonious intent then and there and thereby to extort from the said Peter Ibsen certain sums of money and certain promissory notes."

It then proceeds to set out with sufficient particularity the threats, intimidation and extortion of two notes, one for $200 and one for $650, signed by said Peter Ibsen and payable to the order of Walter F. Patterson.

The claim is that the information should have set forth with precision the crime involved in the defendant's threat; that such crime is neither *named* in the statute nor is any crime *described* in the information in the language defining a statutory or common law offense.

Section 4726, Revised Statutes 1909, made sodomy a felony, mentioning it by name and describing the offense. The section was repealed by a session act in 1911, and in lieu of it a new section enacted (Laws 1911, p. 198), which is in the exact language of the former section 4726, with addition of other particulars descriptive of the crime, but names the offense in the title of the section, "The Abominable and Detestable Crime Against Nature," instead of "Sodomy." It has been held by this court that the amendment of 1911 did not restrict but extended the scope of Section 4726, so that it includes crimes against nature which the common law terms did not embrace. "Sodomy" is within the condemnation of the section as it now stands; so the information did *name* a statutory felony and charged the defendant with having threatened to accuse the prosecuting witness of committing it. [State v. Katz, 266 Mo. l. c. 501; State v. Pfeifer, 267 Mo. l. c. 27-28.]

Was it necessary to *describe* the crime with the same particularity and precision as would be necessary in the prosecution of a person for having committed it? Defendant is charged with the crime of robbery. The other crime is only incidental. It is not charged that anyone committed or attempted to commit it. The defendant threatened to *accuse* the prosecuting witness of it. The threat was the instrument by which the property was extorted and the crime of robbery consummated. In order to make the crime of robbery complete it was not necessary to prove that the *threat* should be couched in language which completely described the crime, to escape the association with which the victim was induced to part with his property. If it were, no one could be convicted. The threat in such cases always achieves its purpose without such definiteness. An information charging blackmail or robbery of this kind, in describing the threatened accusation, sufficiently apprises the defendant of what he has to meet when it *names* the crime which he may identify with his alleged threat. [Glover v. People, 204 Ill. 170; Commonwealth v. Bacon, 135 Mass. 521; Rosen v. United States, 161 U. S. 29, 10 A. C. R. 1. c. 255; Regina v. Norton, 8 Car. & Payne, 671.]

Some excuse for the appellant's contention is found in the case of State v. Sekrit, 130 Mo. 401, cited by appellant, where the defendant was charged with blackmail under what is now Section 4534. The indictment set out that the defendant by letter threatened to accuse the prosecuting witness of a crime, naming a statutory crime, and purporting to describe the acts constituting it. This court held the indictment bad because the threat as alleged did not describe any crime known to the statutes. But an examination of the case will show that the indictment, in stating the threatened accusation, set out in detail certain acts which did not constitue *any* offense prohibited by the statute, and by those positive averments showed the statute upon which the indictment was framed was not violated. It is not intimated that to name the crime without more would not be sufficient. Other cases under the blackmail section, which is similar in purpose and effect

to the section defining robbery in the third degree, so far as the opinions show what the indictments contain, indicate that a description of the crime to which the threat refers by naming it, is sufficient. [State v. Linthicum, 68 Mo. 66; State v. Stewart, 90 Mo. 507.] Another reason why more definiteness is unnecessary is mentioned in the books, and that is the abominable crime against nature is such that the record need not be defiled with details of the different acts which go to constitute it. *"Peccatum, illud horribile inter christianos non nominatum."* [Rosen v. United States, 10 A. C. R. l. c. 257; Honselman v. People, 168 Ill. l. c. 174-5.]

We hold, therefore, that the information was sufficient and the demurrer properly overruled.

II. Appellant claims the cause should be reversed because a case was not made out. The argument is that the word "accuse" means to lodge a formal complaint in some court; that to impute a crime to one or expose him to public condemnation as having committed a felony would not be "to accuse" within the meaning of the statute.

The Word "Accuse."

Appellant didn't ask any instruction by which the jury might find whether the threat involved the filing of a formal complaint or the mere exposure, and there was sufficient evidence from which the jury might have found that the threat involved the making of a complaint on which the victim might be arrested. Patterson's first accusation was, "You know this is a pretty nasty case," and on Ibsen's asking what he meant, he said, "Well, you will find out;" he showed his badge as a detective and said to Deuser, "You go ring up the wagon." Ibsen said he would go without the wagon and defendant wrote down Ibsen's name and address. He said, "You know you are up against it."

Anyone working a game such as is charged here would be likely to do it by indirection; at least he would not formulate his threat in such shape as would make it a technical description of a crime, nor definitely state that he would file a formal charge in court. It was not what Patterson said in exact terms to Ibsen which wrought

upon his fears, but what he intimated and what he led him by insinuations to believe. He indicated to him that he had committed a crime, that he was in a bad fix, that Deuser was likely to push the matter to the utmost. Deuser was the terrible fellow, the bogy man in the background threatening to do all kinds of mischief which Ibsen's morbid imagination might conjure up; he had to be bought to prevent his filing a complaint.

However, even if that were not so, if the jury should have found that the fears excited in Ibsen only related to exposure and publicity, still the threat would be within the terms of the statute, included in the words "accuse or threaten to accuse." Indeed, it would make little difference to the victim whether the blackmailer meant to prefer a formal charge or make the matter public so that officers whose duty it is to enforce the law might do it. One who is so constituted that he may be victimized in that manner sees visions of himself in the toils of the law in any vague intimation that someone will "tell it to the police."

Statutes in other states similar to our Section 4532 have been construed to include threats of exposure. It has been held that "to accuse," in an indictment charging one with the violation of such a statute, does not mean to make a complaint before a magistrate, but to impute a crime as a means of inducing one to pay money, and includes any public accusation. [Commonwealth v. Andrews, 132 Mass. l. c. 264; Robbins v. Smith, 47 Conn. 182; State v. South, 5 Rich. (S. C.) 489; People v. Braman, 30 Mich. 460.] In the case of State v. Stewart, 90 Mo. l. c. 512, in a prosecution under the blackmail section, the threat was no more definite than here and seemed to involve mainly "making the matter public."

III. Appellant's counsel claim further that his demurrer to the evidence should have been sustained because there was a variance between the allegations and the proof. Upon this proposition counsel quotes several passages from the testimony of Ibsen in which he is made to say that when he gave the two

Variance.

notes described in the information, his only purpose in giving them to Patterson was to get back the statement which he had signed at Creve Coeur Lake. This, counsel argued, is a variance from the charge, which is that he gave the notes on account of the threat to accuse him of crime. There is no variance. The paper which Ibsen signed was held by the defendant as a part of his scheme to extort by threats the notes and money from Ibsen. It was the instrument which he employed in making his threat effective.

IV. In the course of the trial the State introduced a witness, one O. E. Boehlinger, to testify that somewhere near the time of the alleged crime the defendant attempted to extort money from him by the same means as that which the information charges was employed to extort it from Ibsen. Patterson met Boehlinger at the Normandie Hotel and used Butler in the same manner as a decoy, displayed his badge as a detective, and made charges and threats similar to those testified to by Ibsen. This evidence was strenuously objected to by defendant's counsel on the ground that in the trial of one on a criminal charge, evidence is not admissible to show the commission by defendant of another crime or other crimes for which he might be separately proceeded against. It is true that is the general rule, but there are some well established exceptions to the rule. The classes of cases to which the exceptions are applicable are discussed at length in the exhaustive opinion of this court, speaking through PHILIPS, C., in the case of State v. Myers, 82 Mo. 558. That opinion is a remarkable exposition of the authorities and the conditions under which such evidence may be admitted. It is cited and quoted as a leading case upon the subject, not only in the later opinions of this court, but in those of many other states. It is unnecessary to burden this opinion with any attempted elucidation of a subject so thoroughly discussed there. In general it may be said that evidence showing crimes, or attempts to commit crimes, of a character like the one charged, is admissible in cases

*Evidence of Similar Crimes.*

where the charge is obtaining property by false pretenses, embezzlement, forgery, uttering forged notes, receiving stolen property, and in some cases of assault, robbery, larceny, violation of the liquor law, criminal slander, burglary and arson. The ground on which the evidence is admitted is that it tends to show the intent with which the crime charged was committed or attempted. Where the act constituting the crime speaks for itself as showing the intent, or where the criminal intent is presumed from the act itself, such evidence is not admissible; but where different inferences may be drawn regarding the intent with which the alleged criminal act was done and the circumstances of the act may be susceptible of an interpretation indicating innocence, then such evidence is admissible. [State v. Flynn, 124 Mo. 480, l. c. 482; State v. Balch, 136 Mo. 103, l. c. 109; State v. Beaucleigh, 92 Mo. 490, l. c. 495; State v. Spray, 174 Mo. 569, l. c. 577-583; State v. Foley, 247 Mo. 607, l. c. 635; State v. Donaldson, 243 Mo. 460, l. c. 475; State v. Wilson, 223 Mo. 156, l. c. 169; State v. Roberts, 201 Mo. 702, l. c. 727; State v. Cox, 264 Mo. 408; State v. Sherman, 264 Mo. 374; State v. Young, 266 Mo. 723.]

The Myers case, 82 Mo. 558, is one where the defendant was indicted for using a trick in making change whereby he attempted to defraud a merchant with whom he was dealing. Evidence that the defendant had made similar attempts with other persons was held admissible. Such evidence shows *quo animo* the acts were done. Similar acts at other times and places and with other persons would throw light upon the character of the transaction which the defendant attempts to explain as innocent. Where one has engaged in the business of obtaining money by false pretenses or by tricks of one kind or another, and his purpose is shown by repeated acts of the same kind, the principle is the same so far as the continuing state of mind, the intent of the actor, is concerned, as where he attempts to extort money by blackmail or threats of any kind. There are reported cases identical in fact and principle with this case. In People v. Haver, 4 N. Y. Crim. Rep. 171, on the trial of a defendant in-

McCardle v. Peck Dry Goods Co.

dicted for blackmail, evidence was held admissible to show that the defendant sent another letter similar to the one which was the basis of the charge in the indictment, although that letter was sent to another person than the complainant. The case of Regina v. Cooper, 3 Cox's Crim. Cases, 547, is where the defendant was indicted for accusing a person of the same crime as charged in the case at bar with the intent to extort money from the person accused, and it was held that attempts to extort money from other persons by such accusations were admissible in evidence.

The court in this case correctly admitted the evidence.

Other errors are assigned and urged upon our attention but we do not deem them of sufficient importance to require extended discussion.

We discover no error in the record and the judgment is affirmed.

*Roy, C.,* concurs.


PER CURIAM.—The foregoing opinion of WHITE, C., is adopted as the opinion of the court. All of the judges concur.