THE STATE v. JAMES E. GARRISON, Appellant.—116 S. W. (2d) 23.

Division Two, May 3, 1938.

454

*Roy McKittrick*, Attorney General, *Wm. Orr Sawyers* and *Max Wasserman*, Assistant Attorneys General, for respondent.

ELLISON, J.—Appellant was convicted of grand larceny for theft of a set of harness worth $45 belonging to Edgar Holly, and his punishment assessed at imprisonment in the penitentiary for three years. He has filed no brief in this court. In the consideration of this appeal we look to the assignments of error in his motion for new trial, but it will be unnecessary to consider all of them, as the cause must be reversed and remanded.

Error is assigned in the overruling of appellant's demurrer to

the evidence. He stood on the demurrer, and did not take the stand or present other testimony. The evidence for the State was that the prosecuting witness, Holly, lived in the country about ten miles southwest of Mount Vernon. Lewis Bailie, another farmer, lived about five miles further on. On the same night, February 18, 1934, a set of harness was taken from the premises of each. The harness taken from Holly was hanging on pegs in the barn. He made immediate complaint to the sheriff. Presently Mr. Holly and Mr. Bailie with two officers went to the home of Jim Kenney near Humansville and there found and recovered Holly's harness. Bailie's harness was found in the possession of the law officers at Osceola, the county seat of an adjoining county. The year before appellant had hauled a harvest hand back and forth from Mr. Holly's farm, had been in his barn and handled the harness then kept on the pegs there. In other words he was familiar with the barn and its contents.

Elvis Marler, a resident of Marionville but at the time of the trial an inmate of the State penitentiary, testified that about eleven o'clock on the night of February 18, 1934, the date the harness was stolen, the appellant with Martha Dill, later his wife, came to the witness's home in Marionville and borrowed two burlap sacks to put some harness in. He had two sets of harness and told the witness he got them from Bailie and "a flat headed Dutchman," to meet a payment on his car and because Bailie had made remarks about his lady friend. On a later occasion he said he had sold one set of the harness to his brother-in-law between Stockton and Humansville. After the witness had gone to the penitentiary, on August 17, 1935, the appellant and Martha Dill went to see him there. The appellant asked the witness not to testify against him, and said if he did he would not leave the courtroom alive and that his (appellant's) lawyer would see that the witness served out his time at the penitentiary.

After proving the harness was worth $45 when stolen and $60 or $65 when it was bought new, the State rested and the appellant interposed a demurrer to the evidence and asked for a peremptory instruction, which was refused. Thereupon the appellant rested and the State asked to introduce additional testimony. Over the strenuous objection of appellant the court permitted this to be done, and Sheriff Jack Killingsworth of Polk County was called to the stand. He was one of the officers who went to the home of Jim Kenney with Bailie and Holly when the latter identified his harness. After making that trip Sheriff Killingsworth called the appellant on the telephone and asked him where he had got the harness and he testified that the appellant replied he got it off of a trader and sold it to Kenney.

This was all the evidence. There is no denying that the State's case was not fully developed. But we are convinced there was enough to make a prima facie case. The harness of the two neighbors Holly and Bailie was taken on the same night. That same night the ap-

pellant appeared at the home of the witness Marler, got two sacks in which to put two sets of harness, and told the witness he had got them from Bailie and from "a flat headed Dutchman." There is no express disclosure in the record that this statement referred to Holly; but it evidently was so understood by all those participating in the trial. Holly's harness was found at the home of Jim Kenney near Humansville. The appellant told Marler he had sold a set of the harness to his brother-in-law "between Stockton and Humansville," and he told Sheriff Killingsworth on the telephone he had got the harness off of a trader and had sold it to Kenney. This would indicate that Kenney was the appellant's brother-in-law. These admissions coupled with the other evidence in our opinion constitutes a substantial showing against the appellant.

In their objections to the trial court appellant's counsel contended he could not be convicted on his mere admissions, without proof of the *corpus delicti*. But proof of the *corpus delicti* only required a showing that the harness had been larcenously taken by some one; it was not incumbent on the State in that behalf to establish the identity of the appellant as the thief. [16 C. J., sec. 1578, p. 771.] His own admissions did that.

A further assignment is that the trial court erred in permitting the State to prove the theft of other harness than that charged in the information, namely the Bailie harness. It is the general rule, well established and long settled, that proof of the commission of other crimes by the defendant is not admissible unless such proof tends to establish the charge for which he is on trial. [8 R. C. L., sec. 194, p. 198; 16 C. J., sec. 1132, p. 586; numerous cases cited in 9 West's Mo. Dig., sec. 369 (5), p. 177.] This is said to be true though such other crime or crimes were of the same general nature and committed at about the same time and place. [State v. Buxton, 324 Mo. 78, 81, 22 S. W. (2d) 635, 638.] That decision says the recognized exceptions to the rule are where the evidence of other crimes tends to establish: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the defendant. [See, also, 8 R. C. L., secs. 196, 197, p. 201; 16 C. J., secs. 1132, 1141, pp. 587, 592.]

The rule seems to be too broadly stated in State v. Weaver (Mo. Div. 2), 56 S. W. (2d) 25, 26(3) where it is said: "Evidence of other crimes of similar nature near the same time is admissible as tending to show the commission of the crime charged," citing State v. Patterson, 271 Mo. 99, 109, 110, 196 S. W. 3, 6, and State v. Smith, 250 Mo. 350, 368, 157 S. W. 319, 324. An examination of these cited cases will show they do not support the generality stated in the Weaver case, but are in line with what is said in the Buxton case.

They are bottomed on the proposition that proof of other crimes is admissible for the limited purpose of showing *intent* or *knowledge.*

But the fourth exception to the general rule, enumerated in the Buxton case, is as well settled as the rule itself. It permits proof of another crime where two distinct offenses are so inseparably connected that proof of one necessarily involves proving the other, 16 Corpus Juris, section 1134, page 588; State v. Smith, supra, 250 Mo. 1. c. 368, 157 S. W. 1. c. 324. More specifically, 8 Ruling Case Law, section 195, pages 199-200, says: "Evidence covering the commission of other offenses is admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. Thus for the purpose of proving a defendant guilty of the larceny of one article it is proper to prove that he stole other articles on the same expedition, but it is not proper to prove what he stole on an independent expedition."

The case cited in support of the last sentence of this text is State v. Kelley, 65 Vt. 531, 27 Atl. 203, 36 Am. St. Rep. 884. We do not think it does. As we read the decision it declares the contrary, saying (36 Vt. 1. c. 537): "The mere fact that certain larcenies were committed on the same night, or the same expedition, did not entitle the State to show all in proof of one. The fact that both the respondent (defendant) and the witness were concerned in them all did not so link them together as to make evidence of all admissible." Later in the opinion (36 Vt. 1. c. 538, 539) the court did hold evidence of the other larcenies on the same expedition was admissible in the peculiar circumstances of that case, but for this reason: The witness who testified thereto provided the horse and wagon used on the trip. The defendant sat in the wagon and waited while the witness went into a shed, took two lap robes, and deposited them in the wagon, which larceny was the one for which the defendant was on trial. The court ruled that in order to prove the defendant knew the robes were being taken with larcenous intent the State had a right to show that other larcenies were committed at different places on the same trip and that the defendant actively participated therein.

The damaging testimony against the appellant in the instant case was that of the witness Marler, who said the appellant came to his house the night the harness was stolen with two sets of harness and told him he had got one from Bailie and the other from "a flat headed Dutchman." He further said he took them to meet a payment on his car and because Bailie had made remarks about his lady friend. Later he said he had sold one set to his brother-in-law, in whose possession it was found. The prosecution could not have made its proof without showing both larcenies, so far as the appellant's statements linked them together. These statements connected the appellant with the larcenies and showed the taking of the harness was with the larcenous intent to deprive the owners thereof. Proof that the harness

of each owner was stolen from his premises on the night the appellant told Marler he had taken harness from them, corroborated Marler. So far the testimony was so inseparably connected as to be competent. But we think the testimony that Bailie's harness later was recovered in the hands of the law officers of St. Clair County was incompetent, as against the appellant in this case.

The last assignment in the motion for new trial is that "the court erred in giving Instruction No. 4, because said instruction is a comment on the evidence in that it singles out and gives undue prominence to statements alleged to have been made by defendant." The instruction is as follows:

"The Court further instructs the jury that if you believe and find from the evidence that the defendant voluntarily made any statement or statements, after the alleged offence was committed, you should consider such statement or statements all together. The defendant is entitled to the benefit of what he said for himself, if true, as the State is to the benefit of what he said against himself, if anything: but in any statement of defendant proved by the State, what he said against himself, the law presumes to be true, because against himself, and what he said for himself you are not bound to believe because said in a conversation proved by the State; you may believe it or disbelieve it, as it may be shown to be true or false by all the evidence in the case."

The instruction is subject to the same criticisms that were made of one condemned in State v. Duncan, 336 Mo. 600, 613, 80 S. W. (2d) 147, 153. The only statements of the appellant proven by the State were statements against interest. The instruction tells the jury they should consider them and that the law presumes them to be true. The Duncan case was followed in State v. Bartley, 337 Mo. 229, 236, 84 S. W. (2d) 637, 640; State v. Long, 336 Mo. 630, 643, 80 S. W. (2d) 154, 161; State v. Pope, 338 Mo. 919, 931, 92 S. W. (2d) 904, 911; State v. Nibarger, 339 Mo. 937, 942, 98 S. W. (2d) 625, 628.

The other assignments in the motion for new trial need not be considered as they are addressed to questions that need not arise in a retrial of the case.

For the reasons stated the judgment is reversed and the cause remanded. **All concur.**