STATE v. CHARLES W. SHILKETT, Appellant.—No. 40454.—204 S. W. (2d) 920.

Division One, October 13, 1947.

1082

*John L. Sullivan* and *Agnes Riley Sullivan* for appellant.

*J. E. Taylor,* Attorney General, and *Arthur M. O'Keefe,* Assistant Attorney General, for respondent.

DALTON, C.—Defendant was indicted and convicted of manslaughter and his punishment fixed at two years imprisonment in the state penitentiary. He has appealed.

About 7:45 A. M., August 14, 1945, a taxicab· arrived at Westwood Stables on Ballas road in St. Louis county, and stopped near the main entrance on the south side. Appellant, a passenger in the taxicab, got out and entered the stables. A short distance inside of the main entrance one William Mottert, an employee, was seated on a trunk. He was facing east, smoking a corncob pipe and talking to Logan McDaniels, another employee. McDaniels was standing east of and facing Mottert, when appellant entered. Mottert and McDaniels did not know appellant and had not seen him before. Without speaking to Mottert, appellant walked up to him, jerked the pipe out of his mouth and said that if he ever caught him smoking a corncob pipe again he would kick him. When appellant reached out to return the pipe, Mottert observed a pistol in appellant's pocket and said, "You have a gun. Are you permitted to carry one?" · Appellant answered, "Yes", showed him a police badge and reached in his hip pocket and drew out the gun saying, "And its loaded too." Appellant unbreached the gun and the shells fell out, five fell on the floor and one in the cuff of Mottert's trousers. Mottert and McDaniels helped appellant pick up the shells. Appellant reloaded the gun and stood facing Mottert, and then turned toward McDaniels and shot him in the stomach. McDaniels walked four or five feet and fell. He was taken to the St. Louis County Hospital where he subsequently died. There had been no argument or conversation between appellant and McDaniels. After the shooting appellant laid the gun on the trunk and said: "Oh, my God, I shot him, but I didn't mean to do it. I am sorry."

Other evidence further tended to show that around 7 A. M., August 14, 1945, the taxicab had been called to a house in Kirkwood, and that appellant came out, got in the cab and directed the driver, a woman, to drive him to the residence of a Mr. Berger on Countryside Lane. Appellant then directed the driver to go to the door and tell Mr. Berger that appellant wanted to see him. Appellant remained in the cab in front of the house while the driver went to the door and rang the door bell. She heard someone upstairs say, "Call the sheriff's office," and she went back to the cab and told appellant they were calling the sheriff. Appellant said, "Let's go." Before the cab had arrived at Berger's home, ▮ appellant had been loading or unloading his gun and, when the driver returned to the cab, appellant had the gun in his hand and it was pointed toward the door of

the Berger home. Appellant was then driven, at his direction, to a stable on Countryside Lane. When he arrived there, he went into the place taking his gun with him, and while he was in there the taxicab driver heard a shot fired, some people came out and appellant returned, entered the cab and directed that he be driven out on Ballas Road to Westwood Stables.

Another witness, Blankemeier, testified that about 6:45 A. M., on August 14, 1945, appellant was standing on the lawn of one Louis Rozier in Kirkwood when the witness drove into a driveway nearby. Blankemeier saw appellant, heard him calling to Rozier and asked appellant not to make so much noise. Appellant walked across two lawns and came up to Blankemeier's automobile and said, "What are you trying to do, get tough?" Appellant pulled out a gun and the witness asked, "What are you going to do with that?" Appellant said, "I will show you", and pointed the gun at an oak tree in witness' front yard and shot at the tree. There was also evidence that at about 7 o'clock A. M., on the morning of August 14, 1945, when state's witness Watkins was making a delivery of feed at the Otis Brown stables on Countryside Lane, he saw appellant come to the stables in a taxicab driven by a woman driver. When the taxicab pulled up in front of the stables, appellant got out and came in hollering for Otis Brown. When he got to Otis Brown, he grabbed him and started wrestling with him, and then turned and shot. The bullet hit in the dirt floor about a foot from the witness' feet. Appellant asked witness if he didn't like it, slapped him and asked what he was going to do about it.

Appellant in his own behalf testified that he was Claims Manager for the Kroger Company and resided in Webster Groves, Missouri, with his wife and two children. He visited Westwood Stables about 7:45 A. M., on August 14, 1945, to talk to Mrs. Crabtree about bringing his horse there to be trained. When he got out of the taxicab, he called "Helen" two or three times, and Mrs. Crabtree came to the window of her living quarters and said she would be down in a minute. Appellant entered the building and saw Mottert seated on the trunk, smoking his pipe. Appellant did not know Mottert, but thought he looked like "Popeye" and was a grouchy old man. To have some fun appellant grabbed his pipe and then handed it back to him. Mottert asked to see appellant's gun and asked if appellant had a permit to carry it. Appellant took the gun from his hip pocket and showed it to Mottert and showed him a police badge from Webster Groves. Appellant "broke" the gun and, when he flipped it open, the cartridges fell out. Appellant told Mottert he would show him how to load it. Mottert picked up one cartridge and handed it to appellant. Appellant "put the bullet down in one of the bottom chambers . . . where the hammer wouldn't hit it and flipped it and pulled the trigger and shot this colored man." Appellant also

testified, "I took the bullet and put it in one of the lower holes and pulled the trigger, flipped it away somewhat to my right." Appellant said he did not see McDaniel until after he had fired the gun.

 Appellant complains of the admission of the evidence concerning his conduct on the morning of August 14, 1945, preceding his arrival at Westwood Stables. The complaint is based upon the ground that the evidence tended to show "separate and isolated acts and crimes distinct from the one charged in the indictment." It is contended that the evidence was inadmissible to show intent for the reason that, under the charge of manslaughter, the criminal intent required to be shown was proven by showing the commission of the act itself, citing State v. Buxton, 324 Mo. 78, 22 S. W. (2d) 635; and State v. Maddox, 339 Mo. 840, 98 S. W. (2d) 535. It is further contended that the requisite intent under the law is presumed from the use of a dangerous and deadly weapon upon the vital part of the body of another, citing State v. Malone, 327 Mo. 1217, 39 S. W. (2d) 786, 790; and State v. Minor, 193 Mo. 597, 92 S. W. 466, 469.

The well established general rule is that proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. State v. Garrison, 342 Mo. 453, 116 S. W. (2d) 23, 24; State v. Buxton, supra, (22 S. W. (2d) 635, 636); State v. Flores, 332 Mo. 74, 55 S. W. (2d) 953, 955. Evidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted. State v. Leonard (Mo. Sup.), 182 S. W. (2d) 548, 551. One well recognized exception to the rule excluding proof or other crimes is where the evidence of such other crimes tends to establish the absence of mistake or accident. State v. Garrison, supra; State v. Buxton, supra; State v. Spinks, 344 Mo. 105, 125 S. W. (2d) 60, 64; State v. Hepperman, 349 Mo. 681, 162 S. W. (2d) 878, 885; State v. Aitkens, 352 Mo.. 746, 179 S. W. (2d) 84, 90; 22 C. J. S. 1096, Sec. 683; 20 Am. Jur. 289, Sec, 310; Underhill's Criminal Evidence (3rd Ed.) p. 200, Sec. 153. The admission of such evidence has been approved in cases where different inferences may fairly and reasonably be drawn regarding the intent with which the alleged criminal act was done or where the surrounding circumstances are such as to be susceptible of an interpretation indicating innocence. State v. Bersch, 276 Mo. 397, 207 S. W. 809, 814 (where the evidence tending to show arson was entirely circumstantial and the fire was susceptible of explanation as accidental); State v. Fischer, 297 Mo. 164, 249 S. W. 46, 49 (embezzlement, where the act charged was susceptible of an innocent explanation); State v. Patterson, 271 Mo. 99, 110, 196 S. W. 3, 6 (robbery by extortion, where the circumstances of the act were susceptible of an interpretation indicating innocence); State

v. Sherrill (Mo. App.), 7 S. W. (2d) 725 (embezzlement, where the showing of a failure to account in a single instance, standing alone, could not fairly be said to conclusively establish that the act was committed with the requisite intent); State v. Craft, 344 Mo. 269, 126 S. W. (2d) 177, 179; 22 C. J. S. 1105, Sec. 686; 20 Am. Jur. 295, Sec. 313.

In the present case the state's evidence tended to show that appellant had never seen Mottert nor McDaniels before. There had been no conversation between appellant and McDaniels. After the shooting, appellant placed his gun on the trunk, said he was sorry, that he didn't mean to do it and went and got the injured man a drink of water. Under the circumstances the shooting was susceptible of innocent explanation on the basis of accident and mistake, as the appellant's evidence shows, towit, that he hadn't seen McDaniels and didn't know he was there until he had been shot; and that appellant didn't even intend to fire his pistol, having placed only one cartridge in one of the bottom chambers where the hammer would not hit it when he pulled the trigger. Even on the state's evidence, the appellant was not conclusively bound to have known of the presence of McDaniels, prior to the shooting, so as to bring the case within the authorities holding that, where the proven facts are such that defendant was bound to know the nature and character of his act, proof of other offenses to show intent are not admissible. State v. Wilcox (Mo. Sup.), 44 S. W. (2d) 85, 89 (manufacturing moonshine); State v. Fenley, 309 Mo. 534, 275 S. W. 41, 44 (transportation of intoxicating liquors); State v. Lebo, 339 Mo. 960, 98 S. W. (2d) 695, 698 (rape); State v. Spray, 174 Mo. 569, 585, 74 S. W. 846, 851 (robbery, where the court said, "The facts constituting the offense, and the very act itself, as shown by the prosecuting witness, was sufficient evidence of intent. The act of defendant, if he committed it, needed no explanation to indicate intent. The act itself carried the intent with it.") ; State v. Spink, supra (statutory rape) 125 S. W. (2d) 60, 64; The court did not err in admitting the evidence objected to. It tended to rebut any inference of accident or mistake in the discharge of the weapon at the time and place mentioned and to show that appellant intended to discharge the weapon when he pulled the trigger. Whether appellant did willfully use a dangerous and deadly weapon upon a vital part of the body of another was an issue to be determined from all the evidence.

Appellant complains that the cross-examination of state's witness Mottert was unduly limited. On cross-examination Mottert was asked if August 14, 1945, was a special day of any kind and whether or not it was "V J Day." He said he didn't know, it wasn't a holiday to him. He was then asked what "V J Day" was and he said he didn't know. When asked whether he had even seen the term "V J", objection was made and sustained and an offer of proof

made. It is contended the court should have permitted further cross-examination for the purpose of testing witness' knowledge and ability to retain and relate events accurately and to show that the witness did not know there was a "V E Day" or "V J Day" and had not heard that the United States had been engaged in war.

The cases cited deal with cross-examination which more directly tended to affect the credibility of the witnesses. State v. Davis, 284 Mo. 695, 225 S. W. 707, 709 (birth of a child before marriage); and State v. Murray, 316 Mo. 31, 292 S. W. 434, 438 (going under different names from the one given). While great latitude should be allowed in the cross-examination of a witness on matters that affect his credibility, the scope of the cross-examination on collateral matters is not without limits and rests within the exercise of a sound discretion on the part of the trial court. State v. Murrell (Mo. Sup.), 169 S. W. (2d) 409, 411, and cases cited. No abuse of that discretion appears from this record. State v. Hannon, (Mo. Sup.), 204 S. W. (2d) 915, handed down herewith.

Appellant complains that the state was permitted to question him, over objection, on matters going beyond the scope of his direct examination. On direct examination appellant was asked, "You have been present during the entire trial of this case and heard the testimony of the witnesses in this case, have you not," to which question he answered "Yes." Counsel then proceeded to question him about matters testified to by Mottert, towit, whether or not he visited Westwood Stables on the morning of August 14, 1945, and what happened there and he testified as hereinbefore stated. On cross-examination he was asked if he had heard the testimony of Blankemeier, Watkins, and Mrs. Combs (the taxicab driver) and, thereafter, whether their testimony was true. Over objection, he said that it was. After appellant had testified about putting only one cartridge in the pistol where the hammer would not hit it, appellant was asked if it wasn't a fact that a cartridge in a lower hole or chamber could not be fired. He admitted that only the cartridge under the hammer when the trigger was pulled could be fired. He was then asked if he was not familiar with guns and didn't he have quite a collection of guns. Over objection, that it was beyond the scope of his direct examination, he said he did not have a collection, but did have three shot guns, a rifle and pistol and took quite a hand at quail hunting and deer hunting.

Section 4081 R. S. 1939 limits the cross-examination of a defendant to matters "referred to" in his examination in chief. It does not limit the cross-examination to a mere categorical review of the matters testified to in the direct examination, but it may extend to any matter referred to or within the fair purview of such examination. State v. Glazebrook (Mo. Sup.), 242 S. W. 928, 931; State v. Hawley (Mo. Sup.), 51 S. W. (2d) 77; State v. Krauss (Mo. Sup.), 171 S. W.

(2d) 699, 700. Appellant had testified particularly with reference to the facts testified to by Mottert, but the testimony of all of the state's witnesses had been "referred to" in his direct examination. The cross-examination about his ownership and familiarity with guns was proper cross-examination tending to discredit his direct testimony about putting the one cartridge in a bottom chamber, where it could not be fired, and tended to show that he knew that a cartridge to be fired had to be under the hammer of the gun. He admitted intentionally pulling the trigger and that the shot was fired. There was nothing in the cross-examination about appellant's guns that was prejudicial to his substantial rights and no reversible error was shown even if the cross-examination be considered to have been too broad in its scope. State v. Barrington, 198 Mo. 23, 95 S. W. 235; State v. Kelley (Mo. Sup.), 284 S. W. 801, 802. The assignment is overruled.

It is contended that Instruction 5 does not correctly define excusable homicide, and that it restricts the defense of excusable homicide. Instruction 5 told the jury that if they believed and found that the defendant at the time and place mentioned had a pistol and without the intentional act of the defendant the pistol was accidenally discharged and produced the death of the deceased they should find defendant not guilty and it further advised the jury that the burden was on the state to prove beyond a reasonable doubt that the shooting was not accidental. Appellant says the instruction permitted an acquittal only if the pistol was accidentally discharged; and that it was "not a correct definition of excusable homicide for the reason that *by the authority* of this instruction the jury could *convict* defendant if defendant intentionally discharged the pistol under any circumstances, even though those circumstances would constitute only *ordinary negligence.*" (Italics ours). In the motion for a new trial appellant said that the instruction conditioned defendant's acquittal only upon the finding that the death of the deceased was occasioned by an accidental discharge of the pistol without defendant's intentional act; that the evidence shows an intentional act in discharging the pistol under the mistaken belief that the cartridge was not in a position to be fired, and if fired, not pointed in a manner or direction to do harm to life or limb; that the instruction should have authorized an acquittal unless defendant was culpably negligent in arriving at this conclusion in reference to the pistol being in condition to fire a leaden bullet or unless defendant should have known the pistol was loaded; and that the instruction should have authorized his acquittal unless he discharged the pistol in a culpably negligent manner.

The instruction is not subject to the criticism mentioned. It points out that the state must prove that the "shooting" was not accidental and that, if the pistol was "accidentally discharged", to find appellant not guilty. It does not purport to submit facts authorizing a conviction, but authorizes an acquittal under the facts

therein stated. The instruction, in view of the criticism, must be considered particularly in connection with Instruction 4 submitting the issue of manslaughter by culpable negligence. This instruction, after a full submission of the issue of culpable negligence based upon the facts in evidence, including the pointing of the loaded pistol, concluded "and if you do not believe that the defendant was guilty of culpable negligence as aforesaid defined and all of the facts as aforesaid beyond a reasonable doubt, you must not find defendant guilty of manslaughter as defined in this instruction." The jury did not find appellant guilty of the charge submitted by this instruction, but "as charged in the indictment" and submitted by Instruction No. 1. When Instruction 4 is read with Instruction 5, it is clear that, if the killing was the result of ordinary negligence, the jury was directed to find appellant not guilty. In addition, the assignment and argument conflicts with appellant's later position that the issue of culpable negligence should not have been submitted.

■ Appellant complains of the court's failure to give, without request, a good instruction on accidental homicide. The motion for a new trial contains no such assignment and the error, if any, may not be considered. State v. Shipman, 354 Mo. 265, 189 S. W. (2d) 273, 276; State v. Breeden (Mo. Sup.), 180 S. W. (2d) 684, 687.

■ Appellant next contends that the indictment charged an intentional killing, towit, that defendant, "feloniously and willfully, did make an assault", and that Instruction 4, authorizing a conviction for an unintentional killing by culpable negligence, was improper for the reason that such a killing was not a lesser degree of the major offense charged. The motion for new trial complains of prejudicial error in the giving of the instruction "authorizing the jury to find the defendant guilty of manslaughter upon the theory of culpable negligence . . . ; that the instruction is not supported by the evidence nor authorized or allowed by the law; that the indictment charges the willful killing and the evidence shows (if anything) . . . intentional killing; unintentional killing by culpable ■ negligence is not an inferior grade nor lesser degree of the major offense charged, but is an offense of the same degree and may not be the subject of instruction unless pleaded."

Instruction 1 submitted the cause to the jury strictly in accordance with the charge in the indictment. Instruction 4 submitted the cause on the theory of manslaughter by culpable negligence. Instruction 4 expressly advised the jury that if they did not find defendant guilty of manslaughter under Instruction No. 1, but did find the facts as submitted in Instruction No. 4, "then the shooting of Logan McDaniels was the result of the culpable negligence of the defendant" and the jury should find him guilty and assess his punishment as therein set forth. By their verdict the jury found appellant "guilty of manslaughter, as charged in the indictment." If it be

true, as appellant contends, that neither the indictment nor the evidence were sufficient to support the giving of Instruction 4, submitting manslaughter by culpable negligence, the appellant was not prejudiced thereby because he was convicted of the offense thereby submitted. State v. Thompson, 338 Mo. 897, 92 S. W. (2d) 892, 894 (5); State v. Nolan, 354 Mo. 980, 192 S. W. (2d) 1016, 1023.

Error is assigned upon the refusal of certain instructions tendered by appellant. The motion for a new trial merely states that the court erred in failing and refusing to give the instructions. Such an assignment of error is too general and presents nothing for review on appeal. Sec. 4125 R. S. 1939; State v. Reagan (Mo. Sup.), 108 S. W. (2d) 391, 395(6); State v. Bennett (Mo. Sup.), 87 S. W. (2d) 159, 162 (6); State v. Bailey, 320 Mo. 271, 8 S. W. (2d) 57, 60.

It is contended that the court erred in permitting improper and prejudicial argument by the prosecuting attorney to the effect that defendant had not called certain witnesses who are charged to have been unfriendly and unavailable to defendant and whose names were endorsed on the information by the state. The record shows that appellant's attorney, in argument, asked why the state had not brought in certain named witnesses, towit, Mrs. Crabtree and one Nichols, to tell "where the blood was on the floor." The reply was that Mrs. Crabtree was under subpoena and had been present and if appellant wanted to contradict Mr. Mottert with Mrs. Crabtree he could have called her to the stand. The record fails to show Mrs. Crabtree was unfriendly or unavailable to defendant or that she was demonstrably friendly to the state. While the shooting was at her place and her employee was killed, appellant testified that he had seen her on several occasions before the date of the shooting. He called her by her first name, Helen, and after the shooting he went up to her apartment and told her about the shooting.

In the motion for a new trial it was not contended that the argument was error because the named witnesses were unfriendly to appellant, but only because their names had "been endorsed by the state." This was insufficient to show that they were unfriendly to appellant. Under the circumstances shown by the record there was no reversible error in the trial court's ruling that the argument was only rebuttal of a matter opened up by the defense. State v. Beasley, 353 Mo. 392, 393, 182 S. W. (2d) 541; State v. Collins, 350 Mo. 291, 165 S. W. (2d) 647. The court did not abuse its discretion in overruling the objection. State v. Demaggio (Mo. Sup.), 152 S. W. (2d) 71, 72.

Error is assigned on the court's action in permitting the prosecuting attorney to ask the jurors to consider whether Berger had children in his home when appellant's pistol was pointed at Berger's door. It is contended the statement "was an attempt to induce the jury to consider evidence of defendant's acts and other

crimes'' for other purposes than shedding light, if any, upon the intent of the defendant at the time of the shooting.

The statement and argument complained of was in reply to prior argument of appellant's counsel about giving appellant and his ''family'' a chance and not to single them out from other people of the community. The reply was to the effect that the defense was relying upon the jury having sympathy for the wife and family of appellant. Counsel then proceeded, ██ ''Was he thinking of any children in the home of Andrew Berger when he pointed the gun at the door of the Berger home out of the taxicab?'' The trial court refused to declare a mistrial or to instruct the jury to disregard the argument. The statement objected to was not legitimate argument in reply, as in the case of State v. Londe, 345 Mo. 185, 132 S. W. (2d) 501, 507, but was retaliatory and based upon evidence admitted for and limited to another purpose. The argument was improper, but not prejudicial. The control of argument of counsel is largely within the discretion of the trial court. Reversible error and abuse of the trial court's discretion, under the facts here, is not shown. State v. Hawley, supra, (41 S. W. (2d) 77, 79).

. Finding no reversible error in the record, the judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.