**STATE of Missouri, Respondent,**

v.

**Addie Earl HILL, Appellant.**

**No. 47360.**

Supreme Court of Missouri,
Division No. 2.

Nov. 9, 1959.

James A. Bell, St. Louis, for appellant.

John M. Dalton, Atty. Gen., J. Richard Roberts, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant was convicted of manslaughter and the jury assessed her punishment at six years' imprisonment in the penitentiary. The defendant admits that she killed one John William Brown in the City of St. Louis by stabbing him with a knife, but she contends she was acting in self-defense and therefore was not guilty of a crime. In general the errors assigned on this appeal are insufficiency of the evidence to sustain the conviction, improper argument and statements to the jury by the attorney for the state requiring the defendant to give evidence against herself and an error in the instruction on self-defense.

The evidence of the state tended to prove that on August 9, 1958, about 10:40 p. m., the defendant, Addie Earl Hill, and John William Brown entered the Grand Central Hotel located at Pine and Jefferson Streets in the City of St. Louis. While Mr. Brown signed the hotel register at the desk in the lobby, the defendant stood near a wall within about ten feet of the Pine Street entrance. There was another entrance to the lobby from Jefferson. A bellboy with a key took the couple to Room 101 to which they were assigned and which was on the same floor as the lobby. The bellboy lead the way. Mr. Brown was next and the defendant followed slightly in the rear. The bellboy unlocked the door, the couple entered the room, and the bellboy returned to the lobby. Some time later, apparently shortly before midnight, screams were heard coming from Room 101. The desk clerk and the bellboy went to the door of the room and found it locked. While the bellboy went for a passkey the door opened and the defendant emerged from the darkened room holding a knife in her hand. Mr. Brown followed almost immediately. He was completely naked and bleeding profusely from cuts and wounds on his body. He made his way to the lobby where he collapsed onto the floor.

Police officers, summoned by the hotel clerk, found Mr. Brown on the lobby floor bleeding and apparently unconscious. The officers took the knife from the defendant who was standing in the lobby and placed her under arrest. The wounded man was taken to the city hospital where he died shortly after arrival. A post-mortem examination revealed that the deceased had a cut wound across his back and one in his left groin and a stab wound in his left chest which penetrated his heart and caused death. He was a man five feet ten inches tall and weighed about 190 pounds. Among the articles found by police in the hotel room was Mr. Brown's wallet containing two ten-dollar bills. There was also testimony that the defendant's dress and underclothing were torn and that she had black and blue marks on her neck, shoulders and knees, and her right buttock was skinned.

In support of her plea of self-defense the defendant testified that she met Mr. Brown casually this Saturday night on Franklin Street. She had known him slightly for ten or twelve years; they visited on the street and in a restaurant where they had sandwiches. During this time she noticed the smell of alcohol on his breath. She left him in the restaurant and got in a taxicab in-

tending to go home but he got in with her and forced her to accompany him to the Grand Central Hotel. She testified she went into the hotel room with him because she was afraid not to go and she "thought maybe after we got back there and I could find out what the purpose was and what ideas he had, I could talk him out of whatever it was he wanted to do." After they got into the room he started to disrobe and while he was doing so she saw him place some object under a pillow on the bed. He asked her to take off her clothing and when she did not do so he grabbed her and threw her on the bed. He then took her panties off and had sexual intercourse with her. Thereafter he committed upon her an unnatural sex act and while he was so engaged the defendant reached under the pillow and found a knife which she opened and held in her right hand, but did not cut him at that time. After he finished the act she asked if she could go home and he said yes. She had put on her panties and was stepping into her shoes when he said he was going to keep her there all night and require her to commit other unnatural sex acts. When she protested he grabbed and started choking her. Then is when she first cut him; she "just drug the knife across his back." Then Brown, saying he was going to kill her, hit her knocking her into a corner. As he advanced on her again she started screaming and swinging the knife until "some blood jumped out on" her. Brown stopped and she ran past him and went out the door of the room into the lobby of the hotel. The defendant also put on evidence of her good character.

■ The defendant's first assignment of error is that the verdict is against the weight of the evidence and against the law in that it is insufficient to sustain the conviction. This court cannot weigh the evidence in a criminal case but can only determine if there is substantial evidence to support the verdict. In making this determination we must view the evidence in the light most favorable to the verdict. We must accept the state's evidence as true and draw therefrom the most favorable inferences to the state and disregard defendant's contradictory evidence. State v. Morris, Mo., 307 S.W.2d 667, 668[1].

■■ Whether the defendant was guilty of manslaughter in stabbing John William Brown to death or should have been acquitted on the ground of self-defense was distinctly a jury question under the evidence in this case. State v. Fuller, Mo., 302 S.W.2d 906; State v. Robinson, Mo., 255 S.W.2d 798; State v. Stringer, 357 Mo. 978, 211 S.W.2d 925. The defendant's account of what happened in the hotel room was not binding on the jury although there was no other testimony with respect thereto. The jury could accept or reject any part of her testimony, the same as any other witness. State v. McKenzie, 177 Mo. 699, 76 S.W. 1015, 1020–1021[6]; State v. Stringer, supra.

■ Next the appellant complains of certain aspects of the closing argument of the circuit attorney. However, her assertion that "the entire argument of the prosecuting attorney was outside the record, not based upon evidence, misquoted the evidence and otherwise attempted to mislead the jury, and should have been stricken" by the court of its own motion and a mistrial declared, is much too general to preserve anything for review. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 589[13].

■ Two of the three remaining charges of misconduct in closing argument may be disposed of together. First the defendant charges that the circuit attorney was allowed to argue that a zipper had been torn from the dress that the defendant was wearing on the night in question and which was offered in evidence. The complaint is that the argument indicated the circuit attorney had some independent knowledge that there had been a zipper in the dress after the defendant emerged from Room 101, and that it had been removed before it was taken by the police officers to hold for

evidence. One of the police officers testified that the defendant's dress had blood over the lower portion of it and that a zipper in her dress was open and had a torn place below it at the time the defendant was arrested. We do not think that the prosecutor's argument is susceptible to the construction that the appellant places upon it. The next item is that the circuit attorney was guilty of misconduct in arguing that there was a fight in the room that night and in implying that two ten-dollar bills which Mr. Brown had was the cause of it. The objection made before the statement was completed was on this ground: "Nothing in the record to show that he had anything in his pockets, outside the evidence." The defendant is mistaken as to the evidence. One of the officers testified that in searching the room afterwards he found Mr. Brown's wallet which contained $20, consisting of two ten-dollar bills.

The trial court has a wide discretion in determining the latitude permitted in the argument of counsel and it is readily apparent that such discretion was not abused in these instances. State v. Benjamin, Mo., 309 S.W.2d 602, 606[6]; State v. Burchett, Mo., 302 S.W.2d 9, 19[19].

The remaining objection to the state's closing argument is that the circuit attorney stated that the crime allegedly committed was murder, thereby creating the impression in the minds of the jury a greater degree of the kind of crime than that with which the defendant was charged. In her brief, the defendant uses the word manslaughter instead of murder, but the page reference to the transcript discloses this occurrence during the argument:

"* * * You have a person today —murder is a cold deadly thing—

"Mr. Bell: If the court please, I am going to object to the mentioning of the word 'murder'.

"Mr. Draper: I will strike that.

"Mr. Bell: Manslaughter.

"Mr. Draper: (Continuing) Homicide is a cold thing."

After the correction there was no further objection or request for a ruling. It is obvious that this was the result of an inadvertent misstatement which was immediately corrected and that no prejudice resulted. State v. Gerberding, Mo., 272 S.W.2d 230, 235[13].

An instruction in customary form on self-defense was given by the court. The defendant now undertakes to contend that a portion of this instruction was erroneous in that it tended to place the burden upon the defendant to prove her defense beyond a reasonable doubt. However, the defendant's motion for a new trial does not complain of this instruction in any respect. Since the matter was not called to the attention of the trial court we are precluded from considering it on appeal. Section 547.030 RSMo 1949, V.A.M.S.; S.Ct.Rule 27.20, 42 V.A.M.S.; State v. Boyd, Mo., 256 S.W.2d 765[1]; State v. Bockman, Mo., 251 S.W.2d 607, 610[8].

The defendant next contends that the trial court erred in overruling defendant's objection to a request by the circuit attorney that the defendant demonstrate how she opened the knife in the hotel room. She asserts that she was thereby forced to testify against herself in violation of her constitutional rights. No supporting authorities are cited. The defendant, testifying in her own behalf, in her examination in chief stated that she got the knife from under the pillow and, in reply to a question by her counsel, stated "I balanced the knife on the side of the bed and opened it." Having so testified, the defendant was liable to cross-examination with respect to that subject matter. Section 546.260. On cross-examination she testified that it was not a spring-back knife and again she testified that she "balanced it on the bed and opened it" without objection. Later in the cross-examination she was asked to "show us how you opened that knife with one hand on the

side of the bed." Defendant's counsel objected saying that she was not required to demonstrate anything and that she was being called on to testify "more or less against her." The objection was overruled and the defendant showed how she opened the knife with one hand. When a defendant in a criminal case voluntarily takes the stand in his own behalf, he waives the protection given him under the state and federal constitutions that he shall not be compelled to testify against himself and subjects himself to the perils of being cross-examined to the extent authorized by law. State v. Swisher, 364 Mo. 157, 260 S.W.2d 6, 10[3]. See also State v. Brown, Mo., 312 S.W.2d 818, and State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920. This was permissible cross-examination and the claim of error is denied.

■ The last assignment of error is that the circuit attorney was guilty of misconduct in saying in his opening statement that the deceased, as he staggered out of the hotel room, said "she cut me for nothing." The court sustained the defendant's objection and defendant's counsel requested that the court instruct the jury to disregard it. The court, continuing its discussion of why the statement would not be proper at that time, neither granted nor refused the request that the jury be instructed to disregard it and defendant's counsel did not press the matter further. During the examination of one of the police officers and in reply to a question by defendant's counsel, the officer testified without objection that the victim gasped "she did it to me." When it develops that a prosecuting attorney is unable to prove a dying declaration referred to in his opening statement, there is no reversible error if it appears that the attorney was acting in good faith in stating that he expected to make such proof. State v. Pleake, Mo., 177 S.W. 355, 358[3].

Further it appears that early in the trial that the court told the jury that when an objection is sustained at any time during the proceedings of the trial, it should not take into consideration any question or answer given; that it should strike the matter from its memory and not base its verdict on it and that such policy would hold true at any time. It is apparent on the whole record that no error was committed in the court's ruling or failing to rule on the defendant's request that the jury be instructed to disregard the statement to which the objection had been sustained. State v. Stillman, Mo., 310 S.W.2d 886; State v. Posey, 347 Mo. 1088, 152 S.W.2d 34.

We have examined all of the assignments of error and find them without merit. Accordingly the judgment is affirmed.

All concur.